400 So.2d 480 (1981)
Howard Takashi OISHI, Appellant,
v.
STATE of Florida, Appellee.
No. 79-1092/T4-559.
District Court of Appeal of Florida, Fifth District.
May 6, 1981.
Rehearing Denied June 18, 1981.
Richard A. Lazzara, Bennie Lazzara, Jr., and Anthony F. Gonzalez, Tampa, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Evelyn D. Golden, Asst. Atty. Gen., Daytona *481 Beach and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for appellee.
ORFINGER, Judge.
Appellant entered a plea of nolo contendere to possession of cocaine, section 893.13(1)(3), Florida Statutes (1977), specifically reserving his right to appeal the denial of his motion to suppress. We affirm.
During a routine airport boarding gate security search, the security guard[1] thought she detected a letter opener in appellant's briefcase when the briefcase passed through the x-ray machine. When a second run through the machine did not satisfy her, and after appellant denied having a letter opener, she asked appellant if she could look inside the briefcase and received an affirmative reply. Upon opening the case, she found a large manila envelope, and opening it revealed another manila envelope with the top folded down.[2] Although appellant requested the guard not to open the second envelope, she did so because she was not satisfied that a weapon was not present, and when she opened the second envelope, she discovered in it a clear plastic envelope with a white powder inside, whereupon she summoned a law enforcement officer who placed appellant under arrest. No letter opener or other weapon was found in the briefcase.
Appellant contends that the warrantless search was an unreasonable and unwarranted intrusion into his right to privacy, that there was no probable cause to search and that the search violated his right to be free from unreasonable searches and seizures as guaranteed to him by the Fourth Amendment to the United States Constitution and by Article I, Section 12, of the Declaration of Rights of the Florida Constitution.
The issues raised by appellant have been answered contrary to his position by several federal courts, but of controlling precedent here is the recent case of Shapiro v. State, 390 So.2d 344 (Fla. 1980). There, a security guard discovered cocaine in Shapiro's suitcase while conducting a security check at the boarding area of the airport. In disposing of Shapiro's contention of a fourth amendment violation, the court said:
For several reasons, we hold that probable cause was not a prerequisite to this search in the security area of the airport, conducted for the limited purpose of discovering weapons, explosives, or other devices which could have been utilized to hijack an airplane.
In order for Shapiro to claim that his fourth amendment rights were violated, he must first establish that he had a reasonable expectation of privacy to be free from this particular intrusion by the detective. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A reasonable expectation of privacy under a given set of circumstances depends not only upon one's actual subjective expectation of privacy but also upon whether society is prepared to recognize this expectation as reasonable. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Here, the defendant clearly failed to demonstrate that he had a reasonable expectation of privacy to be free from the particular intrusion involved in this case  a search for what the detective thought was a bomb.
* * * * * *
Additionally, we conclude that even if Shapiro had some subjective expectation of privacy, society is not prepared to recognize such expectation as reasonable. At this point in time when airplane hijacking is at a crisis level, such an expectation, to be free from the limited intrusion brought about by the screening process utilized in the boarding area of airports, is not justifiable under the circumstances. One who enters the boarding *482 area of the airport knows or should know that he is subject to being searched for weapons or other devices which could be used for hijacking. Notices posted in front of boarding areas inform prospective air passengers that all are subject to anti-hijacking searches. These searches are not directed against individuals but rather are a part of a general screening process to avoid the carrying of weapons or explosive devices onto an aircraft.
Since Shapiro did not demonstrate that he had a reasonable expectation of privacy, the fourth amendment is not implicated, and probable cause was not requisite to justify the search... .
Shapiro, at 347, 348.
Sub judice, there is no allegation nor proof that the search conducted by the security guard was a pretextual search or anything other than what it purported to be; a search for weapons as a part of a routine procedure involving every passenger who boards a commercial airline. Consequently, the Fourth Amendment is not implicated here and probable cause was not requisite to justify the search.
The question remains as to how far the search at the airport security gate can go once we determine that no reasonable expectation of privacy exists and that a limited search may be made. The Fifth Circuit has held that the search may continue until the security officer is satisfied that no harm would come from the passenger's boarding the plane. U.S. v. Cyzewski, 484 F.2d 509, 513 (5th Cir.1973). Only when it becomes unreasonable for the suspect's innocence to be further questioned does the security search itself become unreasonable. Id., at 514. The Florida Supreme Court seems to have approved such an extensive search:
Although the initiating purpose of the search is limited to the detection of a would-be hijacker, the search may be extensive because the airplane hijacker's weaponry could be any of a number of easily concealed things including plastic explosives or gasoline.
Shapiro, at 350.
In Shapiro, the Supreme Court recognizes and quotes extensively from U.S. v. Skipwith, 482 F.2d 1272 (5th Cir.1973) and of particular note is this passage:
[I]t is important to note that the imposition which must be considered is the intrusion on a citizen's right to be free of unreasonable searches, not upon any right to be free of criminal prosecution. Certainly the imposition of a criminal penalty for possession of drugs found during an airport search will burden the one on whom it is imposed; constitutionally speaking, however, he has suffered only the same intrusion as other passengers who were searched. Although the discovery of cocaine in a search for weapons may be unexpected by the government, there is nothing in the Constitution that gives the apprehended felon a right to complain because the product of the protective action was not anticipated. Such a result cannot properly be classified as a windfall. It is the product of valid police work. The government has no duty to catch a carrier of dope sportingly or according to any game book rule. Nor is it material whether the circumstances leading to the discovery of the cocaine were of the defendant's making; all that matters is that the search be legally conducted. 482 F.2d at 1277-78 (emphasis added).
390 So.2d at 350.
In U.S. v. Moreno, 475 F.2d 44 (5th Cir.1973), the court recognized that "modern technology has made it possible to miniaturize to such a degree that enough plastic explosives to blow up an airplane can be concealed in a toothpaste tube... . It is in this context that we must assess the constitutionality of the search." 475 F.2d at 49. A policy of completely searching baggage is a reasonable administrative procedure, which acts not only to "single out individuals," but also "to thwart potential hijackers by deterrence." U.S. v. Cyzewski, 484 F.2d at 514. Passengers seeking entry should know that the exigencies of plane hijackings may subject them to such searches; there is no reasonable expectation that any baggage is immune. Shapiro v. State, supra.
*483 The ability of a passenger to call off the search once something is found has been rejected in Cyzewski.[3] Allowing the passenger to leave, said the court,
greatly damages the prophylactic purpose of the search procedure. Such an option would constitute a one-way street for the benefit of a party planning airplane mischief, since there is no guarantee that if he were allowed to leave he might not return and be more successful. Of greater importance, the very fact that a safe exit is available if apprehension is threatened, would, by diminishing the risk, encourage attempts.
484 F.2d at 513, N. 2.
All the evidence here reflects that the security guard was merely completing a routine anti-hijacking search. Having had a valid reason to search the luggage for a weapon, there is no constitutional impediment to a search of all the contents until all contents are reasonably identified as non-dangerous or the guard is otherwise satisfied that the baggage is safe. Boardinggate searches are limited to a narrow class of self-defined individuals, who voluntarily present themselves to be searched. Further, courts must take into account the likelihood that the search procedure will be efficacious in averting the potential disaster of a hijacking, Shapiro, at 349; thus the deterrent effect of a routine completesearch procedure cannot be discounted. The procedure being constitutional, evidence of another crime discovered in the search is admissible. Shapiro, at 351.
The judgment appealed from is
AFFIRMED.
EVANS, VERNON W., Jr., Associate Judge, concurs.
DAUKSCH, C.J., dissents with opinion.
DAUKSCH, Chief Judge, dissenting:
I respectfully dissent.
The decision of the majority is in conflict with the intent and holding of Shapiro v. State, 390 So.2d 344 (Fla. 1980), which it cites as authority. It is in conflict because in Shapiro there were clearly suspicious actions on the part of the appellant which required the police to conduct the questioned search. In Shapiro, it was held "that probable cause was not a prerequisite to this search in the security area of the airport, conducted for the limited purpose of discovering weapons, explosives, or other devices which could have been utilized to hijack an airplane."
Here, there was no reason at all for the search of the envelope except the unjustifiable curiosity of the security guard.[1] As the majority points out, the only reason the guard felt a need to search further is because she felt the appellant might be attempting to board the aircraft with a dangerous letter opener. In the course of the search when she finally reached the "suspect" envelope, she could have satisfied any reasonable suspicion that the envelope contained the letter opener by simply bending it. Any suggestion that the guard was justified in believing the envelope or its contents posed a potential threat does not stand up under the light of reason and in fact is not supported by any testimony that the guard or anyone felt there was a threat.
In the majority opinion it is correctly said that "the question remains as to how far the search at the airport security gate can go once we determine that no expectation of privacy exists and that a limited search may be made." (emphasis added). The opinion then cites United States v. Cyzewski, 484 F.2d 509, 513 (5th Cir.1973), and *484 says that "the search may continue until the security officer is satisfied that no harm would come from the passenger's boarding the plane." I quite agree with that and I must then wonder why the opinion says this and then upholds this search. Obviously, the suspected threat, the potential letter opener, was not in the envelope and this could have been confirmed as easily and less obtrusively by merely slightly bending the envelope or even, I suspect, by picking it up and feeling the weight of it since, as the majority opinion points out, it was the folded top of the envelope which led the guard astray.
The use of the United States v. Skipwith, 482 F.2d 1272 (5th Cir.1973), citation as authority is not at all persuasive. It is not really on point and is of no precedential value anyway because the aggregation of separate judicial opinions in a case does not produce a precedent. Witt v. State, 387 So.2d 922 (Fla. 1980); Greene v. Massey, 384 So.2d 24 (Fla. 1980). Although two of the three judges agreed in the result reached in Skipwith, they did not agree upon the reasoning therefor. We should not give any support to the suggestion in Skipwith that a "mere or unsupported suspicion standard" is a proper standard when considering fourth amendment rights. Reasonableness, as said in Shapiro, is the everlasting proper standard and Skipwith was a one-shot case, not clearly reasoned and certainly not the law within the United States Fifth Circuit or the law in the rest of the United States. See United States v. Albarado, 495 F.2d 799 (2d Cir.1974); United States v. Kroll, 481 F.2d 884, 886 (8th Cir.1973); United States v. Legato, 480 F.2d 408 (5th Cir.1973); United States v. Moreno, 475 F.2d 44 (5th Cir.1973); United States v. Cyzewski, 484 F.2d 509 (5th Cir.1973); United States v. Epperson, 454 F.2d 769 (4th Cir.), cert. den., 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972).
The majority opinion says "... there is no allegation nor proof that the search ... was ... anything other than ... a search for weapons... ." This is just not so. The entire case is just that  an allegation the guard was intruding improperly with no suspicion, let alone a reason to suspect, that a weapon could be in the envelope when it was finally about to be opened. The evidence is one-sidedly clear that the guard did not suspect, or have reason to suspect, she was continuing a weapons search when she came down to the smallest manila envelope with the folded top. Her prior authority to satisfy herself that no weapon was present ended there and what followed was an illegal search and seizure.
NOTES
[1] An employee of a private security service hired by the airline, and not a law enforcement officer.
[2] It was the folded top of the inner envelope that apparently gave the appearance of a letter opener on the x-ray machine.
[3] See Leavitt v. State, 369 So.2d 993 (Fla. 1st DCA 1979), where the court upheld a search, at the boarding gate, of a toilet kit found in a carry-on bag, even though the passenger protested and demanded that the kit be returned to him and not searched.
[1] In these cases a security guard has as much of a duty to refrain from unlawful searches as does a law enforcement officer. She has essentially the same authority and must exercise essentially the same restraint from improper intrusion. United States v. Davis, 482 F.2d 893 (9th Cir.1973); United States v. Gorman, 484 F. Supp. 529 (S.D.Fla. 1980).