495 So.2d 907 (1986)
The STATE of Florida, Appellant,
v.
Donald Bruce KASSIDY, Appellee.
No. 86-703.
District Court of Appeal of Florida, Third District.
October 14, 1986.
Jim Smith, Atty. Gen., and Michele L. Crawford, Asst. Atty. Gen., for appellant.
Weiner, Robbins, Tunkey & Ross and Peter Raben, Miami, for appellee.
Before BARKDULL, HUBBART and BASKIN, JJ.
PER CURIAM.
Granting a defense motion to suppress evidence seized from defendant Kassidy, the trial court found:
1. After observing DONALD KASSIDY in the main terminal of the Miami International Airport, Metro-Dade Detectives Facchiano and Noriega decided to surveil his activities. They followed him until he and his carry-on luggage item had passed through the security check point at one of the airport concourses. KASSIDY passed through this security check point without incident. Similarly, his carry-on baggage passed through without incident. As KASSIDY was about to retrieve his carry-on bag, Noriega stepped in front of him, produced identification establishing his official capacity as a police officer, and advised KASSIDY that he wished to speak with him.
2. After explaining who he was, Noriega asked KASSIDY: "Can I look in your bag?" KASSIDY responded: "Yes." (It should be noted that Facchiano was not within earshot of this conversation since he was occupied speaking to another airline passenger nearby.) Noriega immediately instituted a search of KASSIDY's carry-on bag. During the course of this search he had brief conversation with KASSIDY which was, in essence, meaningless. The search of the bag revealed no contraband of any kind.
3. Noriega then told KASSIDY that he was engaged in an effort to prevent contraband or narcotics from passing through the Miami Airport to other cities. He succeeded this statement with the following question to KASSIDY: "Do you mind if I pat you down?" KASSIDY *908 responded: "Sure." Facchiano immediately began searching KASSIDY's person. This search produced a quantity of cocaine which ultimately was seized and which forms the basis of this prosecution.[1]
4. Although Detective Noriega testified that he asked KASSIDY: "Can I pat you down?" and that KASSIDY responded either "yes" or "okay," this Court finds that his recollection of the precise wording of the question and of KASSIDY's answer is less than convincing. In fact, even Noriega was not sure of the exact answer which KASSIDY purportedly gave. What he does recall is that KASSIDY gave an "affirmative" response. His partner, Detective Facchiano, with greater experience on the same job, trained Detective Noriega informally during the course of their two years together as partners. Facchiano testified that he most frequently utilizes a question phrased: "Do you mind if ..." Although Facchiano could not hear the question which was asked of KASSIDY by Noriega, experience dictates the likelihood that Noriega utilized the same question implemented on numerous occasions by his partner and erstwhile trainer, Detective Facchiano.
5. This Court further finds that the testimony of DONALD KASSIDY was highly credible. His demeanor on the witness stand was indicative of his truthfulness. His testimony makes good common sense. His agreement to permit a search of his bag was given from the full knowledge that no contraband was contained in it. His refusal to give permission or (by stating: "Sure" [I mind if you search]) consent to a search of his person is consistent with the fact that any such search would surely reveal the cocaine which he was carrying and result in his immediate arrest. The fact that KASSIDY refused to give this consent (albeit in an abrupt fashion) is corroborated, inferentially, by his subsequent decision to refuse to be questioned by the police and to insist upon having an attorney present to assist him. Immediately after his arrest, the officers and KASSIDY testified that he was advised of his constitutional rights under the Miranda decision. KASSIDY immediately advised the officers that he wished to remain silent and that he wanted an attorney. The fact that Noriega either misunderstood or chose to ignore KASSIDY's denial of consent to search his person is corroborated by the admitted fact that after advising the detectives that he wished an attorney and he wished to remain silent, Noriega nevertheless initiated questioning of KASSIDY during an automobile ride from the airport to the nearby police station. Certainly, an officer who would choose to ignore such an explicit decision to stand on constitutional rights to counsel and silence could be presumed to be equally willing to ignore a person's denial of consent to a search.
6. Prior to the search of KASSIDY's person, Noriega told KASSIDY to give him his airline ticket and, later, his identification. This action certainly, in conjunction with everything which had happened earlier, constituted a detention of KASSIDY under the Fourth and Fourteenth Amendments to the United States Constitution and under Article I, Section *909 12 of the Florida Constitution. That detention was certainly unreasonable and was certainly not based upon any founded suspicion of criminal activity. Noriega did not advise KASSIDY that he was free to leave and KASSIDY was certainly correct in his belief that he was not free to leave at that time. In any event, the non-consentual [sic] search of KASSIDY was not predicated upon the issuance of a warrant, nor upon probable cause. In fact, it was not even supported by reasonable suspicion of criminal activity.
7. In summary, the seizure by Detective Noriega was not permissible. It was not based upon any exception to the warrant requirement of the Florida and Federal Constitutions and it was not based upon consent. (Even after the opaque and wrapped object had been seized from Mr. KASSIDY's person, the officers still made no effort to obtain probable cause by utilizing such available devices as a trained narcotics dog, nor did he make any attempt to obtain a warrant. He simply opened the package without any permission or consent and determined that it contained a quantity of cocaine. Further, he never explained KASSIDY's Fourth Amendment rights to him, nor did he even utilize available written "consent to search" forms.)
8. Based upon these findings of fact and other resolutions by the Court concerning the facts in dispute, it is the finding of this Court that the State has failed to sustain its burden of demonstrating an exception to the rule that warrantless searches are presumptively unreasonable. The State's argument that the search was legitimized by a knowing and intelligent consent given by KASSIDY to the detective is simply not supported by any credible evidence.
We affirm. Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981); Major v. State, 389 So.2d 1203 (Fla. 3d DCA 1980); Robinson v. State, 388 So.2d 286 (Fla. 1st DCA 1980); State v. Frost, 374 So.2d 593 (Fla. 3d DCA 1979).
NOTES
[1] The Defendant filed a Motion to Admit Polygraph Results and Opinions. Mr. KASSIDY was polygraphed by George Slattery, a noted expert polygraph examiner used frequently by lawyers, police officers and prosecutors in this Circuit. On numerous occasions, Mr. Slattery has testified before this and other courts and has been qualified as an expert witness in the field of polygraphy. Mr. Slattery is highly regarded by this Court. [I]t was the opinion of Mr. Slattery that Mr. KASSIDY was truthful when he stated  while being polygraphed  that he was asked: "Do you mind if I pat you down?" and that he was being truthful when he said his response to this question was: "Sure." Although the Court admitted the testimony of Mr. Slattery to assist the Court in arriving at certain issues raised in this cause, it is stressed here that the credibility determinations which were reached by this Court were arrived at independently of and not biased by the testimony of Mr. Slattery. (Emphasis supplied)