KHOUZAM, Judge.
Richard R. McDade was charged with various sex crimes after his sixteen-year-old stepdaughter reported that he had been sexually abusing her since she was ten years old. She gave law enforcement two recordings that she had made of her conversations with McDade after her mother did not believe her story and her boyfriend encouraged her to obtain proof of the abuse. These incriminating recordings were presented at trial. The jury found McDade guilty of two counts of sexual battery on a child less than twelve years of age, one count of solicitation of sexual activity with a child, and two counts of sexual battery on a child by a person in familial or custodial authority. McDade appeals, arguing that portions of the victim’s boyfriend’s testimony should have been excluded as hearsay and that the recordings should have been suppressed. We affirm, but we certify a question of great public importance to the Florida Supreme Court.
I. THE FACTS
The victim in this case was born in Mexico in 1994. In 2001, she and her mother moved to Florida. Though their immigration status was a matter of dispute during the trial, the victim testified that she believed that they were illegally in the country. In 2005, the mother married McDade, who was approximately sixty years of age at the time. The mother testified that the couple never had a sexual relationship because they both had health issues. Indeed, McDade and the mother both testified that he suffered from erectile dysfunction. However, the victim alleged that he sexually abused her over a period of years, threatening that she and her mother would be returned to Mexico if she reported what he was doing.
McDade operated an ice cream truck, and the victim’s mother worked as a janitor. During the period of time when the alleged abuse occurred, the victim was typically home alone with McDade for several hours in the afternoon each school day. She testified that on one such afternoon McDade instructed her to come into his bedroom and told her to take off her clothes. He covered her face with a blanket and he penetrated her with both his finger and his penis. She was ten years old at the time. McDade allegedly continued to engage in this conduct weekly until April 2011, when she was sixteen.
Over the years, the victim claimed that she reported this abuse to several people, including her mother, a doctor, and two ministers at her church. Her mother admitted that her daughter reported this abuse to her and that she took her daughter to a doctor. The mother adamantly did not believe her daughter. When pressed about her accusations, the victim recanted on more than one occasion. Perhaps because of her retractions, no one reported her claims even though any person who has reasonable cause to suspect child abuse must report it. See § 39.201, Fla. Stat. (2012). She explained that she retracted her claims due to the fear of being sent to Mexico.
In October 2010, the victim started going out with a boy. Her mother and McDade did not like the boyfriend, and this created conflict within the family. In an effort to prevent her from sneaking out of the house, her mother and McDade made her sleep in a closet near their bedroom. She told her boyfriend that McDade was raping her, and he encouraged her to gather proof of the abuse. He loaned her his MP3 player to use as a recording device. In April 2011, with the MP3 player hidden in her shirt, she approached McDade in his bedroom on two *468 occasions when they were alone after school. She was essentially conducting her own investigation, hoping to prompt McDade into making incriminating statements that she could secretly record as evidence of abuse.
The recordings supported the victim’s testimony that McDade would regularly ask her to have sex with him after school. On both occasions, though he did not use sexually explicit language, he appeared to be asking her to have sex with him. He pressured her by suggesting that if she did not have sex with him he would get physically sick. McDade also indicated he was doing her a favor by not telling her mother that they were having sex because if the mother knew she would take the victim back to Mexico.
Once the conversations were recorded, the victim shared them with her boyfriend. They made digital copies of the recordings and gave them to the police. As a result, the victim was removed from the home and placed in a foster home. The State filed multiple charges against McDade.
McDade moved to suppress the recordings under section 934.06, Florida Statutes (2010). The trial court conducted an evi-dentiary hearing comparable to a standard suppression hearing. It denied the motion. The recordings were introduced into evidence at the trial and were a prominent feature of the trial. McDade was convicted of all but one of the offenses and is now serving long sentences, including two life sentences for capital sexual battery. He appeals these judgments and sentences.
It is worth emphasizing that the evidence at trial was surprisingly limited. There was no DNA evidence[1] or other physical evidence to support the victim’s claims. McDade waived his Fifth Amendment rights and testified at his trial. As a result, this case rested on the relative credibility of the victim and McDade. Her mother testified in support of McDade and claimed that her daughter was lying about many things. Thus, the digital recordings of the conversations in the bedroom were probably the most important evidence presented during this trial.
II. THE VICTIM’S BOYFRIEND’S TESTIMONY
McDade claims that the victim’s boyfriend’s testimony that the victim told him that she was being raped by McDade should have been excluded as hearsay.[2] “Admission of evidence is within the discretion of the trial court and will not be reversed unless there has been a clear abuse of that discretion.” Ray v. State, 755 So.2d 604, 610 (Fla.2000). Because the statements in question were introduced to show why the boyfriend encouraged the *469 victim to make the recordings, we conclude that they do not constitute hearsay and thus the court did not abuse its discretion in admitting them.
The boyfriend’s testimony about the victim’s statements was not hearsay because it was not offered to prove that McDade actually raped the victim. See Krampert v. State, 13 So.3d 170, 174 (Fla. 2d DCA 2009) (holding that statements were not hearsay where they were not offered to prove the truth of the matter asserted but instead to explain their effect on the listener and the listener’s subsequent conduct). Instead, the statements at issue here were offered to explain why the victim’s boyfriend gave her his MP3 player to record her conversations with McDade. The statements were relevant to rebut the defense theory that the victim and her boyfriend fabricated the abuse allegations so that they could spend more time together.
Even if the statements had been admitted in error, any error was harmless. See Ventura v. State, 29 So.3d 1086, 1089 (Fla.2010) (explaining that an error is considered harmless only if there is no reasonable possibility that it contributed to the conviction). The boyfriend merely repeated the victim’s statement without going into any detail, and evidence was presented that the victim had shared the same information with various other people. Thus, there is no reasonable possibility that the boyfriend’s brief repetition of the victim’s statement affected the verdict.
III. THE RECORDINGS MADE BY THE VICTIM
McDade also argues that the recordings should have been suppressed because chapter 934, Florida Statutes (2010), prohibits “any person” from recording oral communications without consent and disclosing such recordings. We hold that the narrow factual circumstances of this case do not fall within the statutory proscription of chapter 934, but we certify a question to the Florida Supreme Court.
The standard of review for an order denying a motion to suppress evidence under section 934.06 has not been extensively discussed in prior case law. As a threshold matter, we note that the Fourth Amendment is not implicated in this case because the recordings were made by a private individual as opposed to a government actor: “the protection against unreasonable searches and seizures applies only to cases involving governmental action; it does not apply when the search or seizure was conducted by a private individual.” Armstrong v. State, 46 So.3d 589, 593 (Fla. 1st DCA 2010). Because McDade was attempting to invoke the protection of 934.06, we conclude that he had the initial burden of proof.[3] Typically, we would review the trial court’s application of the statute de novo and the court’s findings of fact to determine if they are supported by competent, substantial evidence. See Chackal v. Staples, 991 So.2d 949, 953 (Fla. 4th DCA 2008). But see O’Brien v. O’Brien, 899 So.2d 1133, 1137-38 (Fla. 5th DCA 2005) (reviewing the trial court’s decision to exclude electronic communications under section 934.03 for an abuse of discretion). However, because the facts here are not in dispute and we are reviewing a trial court’s application of a statute in this context, we conclude that we review the trial court’s decision de novo. See Kephart v. Hadi, 932 So.2d 1086, 1089 (Fla.2006) (“The interpretation of a statute *470 is a purely legal matter and therefore subject to the de novo standard of review”).
Chapter 934 explicitly and broadly prohibits “any person,” including private individuals, from recording oral communications without consent and disclosing such recordings. §§ 934.02(5), .03(1). Further, “[wjhenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial.... ” § 934.06. But the statutory proscription of chapter 934 only applies where the person uttering the communication has a reasonable expectation of privacy in that communication under the circumstances. § 934.02(2) (defining “oral communication” as “any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation....”). The Florida Supreme Court has explained that
[t]his expectation of privacy does not contemplate merely a subjective expectation on the part of the person making the uttered oral communication but rather contemplates a reasonable expectation of privacy. A reasonable expectation of privacy under a given set of circumstances depends upon one’s actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable.
State v. Inciarrano, 473 So.2d 1272, 1275 (Fla.1985). Significant factors to consider in determining whether a defendant’s expectation of privacy was reasonable under the circumstances include the location in which the communication occurred, the manner in which the communication was made, and the kind of communication at issue. Stevenson v. State, 667 So.2d 410, 412 (Fla. 1st DCA 1996).
Inciarrano involved a recording a victim made of his own murder. 473 So.2d at 1273. The defendant had entered the victim’s office. Id. at 1274. The victim was recording his conversation with the defendant regarding a business deal in which the victim no longer wanted to participate. The recording, found in the victim’s desk drawer, had captured the conversation as well as the sound of a gun being cocked, five shots being fired, several groans, the gushing of blood, and the victim falling from his chair. Id. The court determined that any subjective expectation of privacy that the defendant may have had was not justified under the circumstances because society would not be prepared to recognize it as reasonable. Id. at 1275.
As in Inciarrano, this case involves recordings made by a victim of the very criminal acts by which she was victimized. The minor victim recorded McDade soliciting her for sexual acts, as he had done for years. And though the conversation took place in McDade’s home, it was also the victim’s home. Considering these circumstances and consistent with the analysis and holding in Inciarrano, we conclude that any expectation of privacy McDade may have had is not one which society is prepared to accept as reasonable. Indeed, society has a special interest in protecting children from sexual abuse, and exceptional treatment of sex crimes in other areas of the law reflects these societal values. See, e.g., § 90.404(2), Fla. Stat. (2012) (providing that similar fact evidence of other crimes, wrongs, or acts is generally inadmissible when it is only relevant to prove bad character or propensity but creating exceptions to this rule for cases where the defendant is charged with child molestation or a sexual offense); § 394.910, Fla. Stat. (2012) (addressing the unique risk that sexually violent predators pose to society by creating a civil commitment proce *471 dure to provide for their continuing care and treatment); § 39.201 (providing that “any person” who knows or has reasonable cause to suspect that a child is being abused, sexually or otherwise, must report that knowledge or suspicion). This case involves the rape of a child in her own home by her own stepparent. It is precisely because the rape of a child is such a heinous crime which is so often difficult to detect that society has a special interest in guarding children from it and exceptions in the law exist to further this goal. Considering these values and the already-existing legal exceptions that reflect them, we conclude that suppressing the recordings pursuant to chapter 934 under the circumstances of this case would produce an absurd result — a result we cannot fathom was intended by the legislature.[4]
Accordingly, we affirm. However, we certify the following question of great public importance to the Florida Supreme Court:
DOES A RECORDING OF SOLICITATION AND CONFIRMATION OF CHILD SEXUAL ABUSE MADE BY THE MINOR CHILD FALL WITHIN THE PROSCRIPTION OF CHAPTER 934, FLORIDA STATUTES (2010)?
Affirmed; question certified.
ALTENBERND, J., Concurs specially with opinion.
YILLANTI, J., Concurring in part and dissenting in part with opinion.
ALTENBERND, Judge,
Concurring specially.
I concur in Judge Khouzam’s opinion for the court. The key issue in this case is whether the supreme court, when explaining the statutory definition of a protected “oral communication” in Inciarrano, intended for the “circumstances” that “society” is not prepared to recognize to include Mr. McDade’s alleged long-term abuse of a child. In Inciarrano, the circumstances the court actually considered were the semi-public place where the recording occurred, the determination that the defendant was a trespasser, and perhaps the fact that the recording device was in plain view. If these types of factors, i.e., time, place, legal status of the defendant, and physical conditions associated with the recording, are the only factors we should consider in this case, they all strongly support Mr. McDade’s expectation that his statements were not being intercepted. If those are the only factors we are allowed to consider, then Judge Villanti is correct and we should reverse these convictions and sentences.
Under the “society is prepared to recognize” test, I conclude that in 2011 a person who regularly and consistently abused a teenager in a bedroom of their shared home had no reasonable expectation that their conversations about the abuse would never be recorded. In this modern digital *472 world, any such adult should have expected that eventually a teenage victim would record such conversations in self-defense. Accordingly, I concur in this decision because Mr. McDade could not reasonably expect his statements to be protected oral communications.
Despite my concurrence, I frankly share some of Judge Villanti’s concerns about the direction that Inciarrano takes us in today’s decision. I share five concerns in this special opinion.
I. THE BURDEN OF PROOF AT THE PRELIMINARY HEARING
My first concern involves the burden of proof and persuasion on this issue. Whether this recording violates chapter 934 is not an issue that is resolved at a typical hearing on a motion to suppress under Fourth Amendment standards. In the trial court, the hearing was conducted like a hearing on a motion to suppress, but it was actually a preliminary hearing that should have been conducted under section 90.105, Florida Statutes (2011), to determine whether these recordings are statutorily inadmissible under section 934.06. We have assumed that the burden of proof and persuasion at this hearing rested with Mr. McDade. But at the time of the preliminary hearing, he was presumed innocent; he had all of his Fifth Amendment rights. By expanding the holding of Inciarrano to include these circumstances, we may have effectively placed the burden on him to prove by a preponderance of the evidence that he is innocent in order to prevent the recordings from being admitted into evidence. I am troubled by this procedure.
In this case, however, I do not believe that the burden of proof at the hearing is dispositive. The trial court seemed to place the burden of proof on the State. Moreover, the evidence is essentially undisputed on this issue. The issue of whether these conversations are protected “oral communications” for purposes of the statute is a question of law and we correctly review it de novo. If this case involved substantial disputes of fact at the preliminary hearing, the burden of proof and persuasion could be a very difficult issue.
II. BAD FACTS SOMETIMES MAKE FOR BAD LAW
Second, there can be little question that the bad facts in Inciarrano placed great pressure on the supreme court to reach the outcome it reached. This case presents equally difficult facts for this panel. As I explain at the end of this opinion, we are bound to be faced with an increasing number of “bad facts” cases under chapter 934. In 1985, when the supreme court considered Inciarrano, it arguably had two options. First, it could have relied on the strong legislative policy announced in 1974. Florida, unlike most other jurisdictions, requires the consent of “all parties” to an intercepted oral communication.[5] If it had enforced this strong policy, it could then *473 have allowed the legislature to revisit its questionable minority view. Instead, it selected a second option. It relied on the “objective” test within the definition of “oral communication” to provide a societal-approval test that allows for case-by-case outcomes when statutory suppression of evidence seems unnecessary. As discussed later, I question whether the societal-approval test is an erroneous importation of the Fourth Amendment into this statute. It is not an objective test in the normal common law sense. This test is inherently subject to criticism as a result-oriented test. In this case, the stepdaughter is undoubtedly aided by the result we reach, but I am left to wonder whether the law would be stronger if we simply had required the legislature in 1985 to re-examine the merits of the 1974 amendment creating the “all parties” requirement in the statute.
III. INCIARRANO UNINTENTIONALLY WEAKENED THE LEGISLATIVE POLICY PROTECTING OUR PRIVACY
Third, and related to my concerns in the preceding section, by shifting the analysis of this statute from the strong language in section 934.03(1) to the definition of “oral communication” in section 934.02(2), the decision in Inciarrano weakened the legislative policy protecting privacy. If one examines the statute as created in 1969 and as amended in 1974, the legislature constructed a strong, broad policy protecting people from surreptitious interception of their oral communications. The policy created a prohibition of secret recordings that was enforced by both civil and criminal penalties, as well as by the statutory exclusionary rule contained is section 934.06. This broad policy was subject to enumerated exceptions in section 934.03(2). The exceptions included the right of police to conduct lawful investigations and of private citizens to record conversations only with the consent of all parties. Significantly, the legislature created no exception for the surreptitious interception of oral communications by private citizens conducting their own personal investigations of ongoing criminal activity. This structure created a strong policy and then placed the burden on litigants to overcome that policy by establishing one of the enumerated statutory exceptions.
But Inciarrano changed this policy by its reliance on the definition of “oral communication” in section 934.02(2). The reasoning in Inciarrano provides protection from interception of conversations only if, after the fact, a judge decides that “society” is willing to provide that protection. To some degree, the content of the recording is used to determine whether the party that opted to record the conversation is either a felon or a person free to record the conversation. This is true even though the recording party, before the recording device is turned on, can never be certain what the recorded party will say after it is turned on.
By relying on section 934.02(2) instead of section 934.03, the holding in Inciarrano flips the burden of proof and persuasion from the party seeking an exception to the statute to the party seeking the protection of the statute. That may not be an unreasonable policy, but I see little evidence that it was the policy of the legislature that enacted these protections. Nevertheless, the legislature has had a generation to overrule Inciarrano and it has not done so.
It is noteworthy that the difficult issue in this case is only difficult in a Florida state court. Under the similar federal statute, these recordings are admissible because the stepdaughter consented to the recording. The federal statute has the *474 same definition of “oral communication,” but I can find no instance in which a federal court has been forced to apply the societal-approval test to avoid a difficult outcome. See 18 U.S.C.A. § 2510(2) (2012).
IV. THE ODD RELIANCE ON FOURTH AMENDMENT CASE LAW IN INCIARRANO
Fourth, with all due respect to the members of the supreme court in 1985, I am inclined to believe that the societal-approval test announced in Inciarrano is not a proper interpretation of the statute and is, in fact, an odd importation of Fourth Amendment standards. When the supreme court created the “society is prepared to recognize” standard to measure the objective reasonableness of a person’s expectation that communications are not being intercepted, the court relied exclusively upon Shapiro v. State, 390 So.2d 344 (Fla.1980). But Shapiro did not involve a recording. The defendant in Shapiro was charged with possession of cocaine. He was searched at an airport. Shapiro involved a warrantless search by government agents. This was a typical Fourth Amendment case that relied on the analysis in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The court’s decision to import Fourth Amendment analysis into this statute substantially changes the analysis performed under the statute. Ordinary citizens are permitted to intrude into one another’s private lives under an entirely different set of rules than those that control the government. The Fourth Amendment of the United States Constitution and article I, section 23 of the Florida "Constitution are intended to protect people from undue government intrusion into their private lives. These constitutional protections may play a small role in molding the social standards that underpin the privacy rights that exist between and among private persons, but that is all they do. The rights between such private persons may be regulated by the legislature as it sees fit, subject to the limitations of article I, section 23.[6]
Society is not fond of murderers or child molesters. If the circumstances to be considered are exclusively factors such as time, place, and legal status of the defendant, this test is easier to apply but it may not actually be a societal-approval test. If we consider the additional factors that we admittedly have relied upon in this case, “society’s” opinion on the matter is a troubling test that leaves our rights in flux.
Under the common law, an objective test is not based on society’s opinion but on the standard established by the ordinary reasonable person living in that society under like circumstances. See Fla. Std. Jur. Instr. (Civ.) 401.4; Miami-Dade Police Dep’t v. Martinez, 838 So.2d 672, 675 (Fla. 3d DCA 2003); Prosser, Law of Torts § 32 (1971). Due to the holding in Inciarrano, we are not allowed to employ the typical ordinary reasonable person standard in this case. Frankly, I am not certain what the outcome would be under that test.
V. THE MODERN DIGITAL WORLD COLLIDES WITH CHAPTER 934
In closing, I would point out that the decision whether to enforce the strong lan *475 guage and original policy of the statute or to take an “all the circumstances” approach that permits some use of seemingly private recordings is a decision that must be made in the context of the modern digital world. Chapter 934 was adopted in an analog era before cell phones and MP3 players were invented. Today we live in a society where practically every teenager and even many senior citizens carry small, concealed recording devices on their persons. The modern smartphone can record video as well as audio and transfer it immediately to the Internet. It is likely that the “all parties” requirement in chapter 934 now results in hundreds of illegal recordings and perhaps thousands of illegal disclosures on the Internet in Florida every day. It seems ill advised to depend upon individual trial judges and the societal-approval test to sort out the good recordings from the bad after the fact. The huge advances in technology that have affected our society’s view of privacy should prompt the legislature to revisit the 1974 amendment and to decide whether it would now be more prudent to return to a statute comparable to the federal statute and the statute in place in most other states.

. McDade allegedly has had a vasectomy. The testimony of the girl at least suggests that she may have incorrectly believed that she could not obtain DNA evidence for this reason.

. The entirety of the boyfriend's testimony on the victim’s reports of sexual abuse is as follows:
[Prosecutor]: Okay. At some point did [the victim] tell you that her [stepdad], Richard McDade, had been having sex with her? [Boyfriend]: Yeah. She told me that she was being raped when she was younger. She said—
[Defense]: Objection, Your Honor. It's calling for hearsay.
After the objection was overruled, the prosecutor continued.
[Prosecutor]: Did there come a time after you met [the victim] that she told you that her stepdad had been, as you put it, I guess raping her, but sexually abusing her? [Boyfriend]: Yes.
[[Image here]]
[Prosecutor]: Did there come a point when you told her she should tape it on an mp3 player?
[Boyfriend]: Yes.

. Though we recognize that the State mistakenly proceeded at the suppression hearing as if it had the burden of proof, this procedural error does not change the result here because the facts in this case are not in dispute.

. We note that in reaching this conclusion, we have considered State v. Walls, 356 So.2d 294, 296 (Fla.1978), in which the Florida Supreme Court held that an extortion threat delivered personally to the victim in the victim's home was an "oral communication” within chapter 934. Though Walls dealt with a recording of a criminal act made by a victim in his home, its holding does not control here because it does not implicate society’s special interest in protecting children from sex abuse. Moreover, the reasoning in Walls has been called into doubt. See Inciarrano, 473 So.2d at 1275 (distinguishing Walls because it did not address the requirement that any expectation of privacy in a communication must be reasonable for chapter 934 to apply); Jatar v. Lamaletto, 758 So.2d 1167, 1169 (Fla. 3d DCA 2000) (questioning the continued validity of Walls in light of Inciar-rano and holding that Jatar’s extortion threat was not a protected "oral communication” under chapter 934 because his expectation of privacy was not justified).

. In 1971, President Richard M. Nixon began secretly recording conversations in the White House. Nixon White House Tapes, Nixon Presidential Library & Museum, http://www. nixonIibrary.gov/virtuallibrary/tapeexcerpts/ (last visited May 22, 2013, 11:31 A.M.). When this was discovered, the public was very troubled by the practice. In 1974, with virtually no debate, the legislature amended Florida’s statute to require the consent of "all of the parties” to a conversation. See ch. 74-249, § 2, at 695, Laws of Fla.; State v. Tsavaris, 394 So.2d 418 (Fla.1981) (describing enactment of amendment). The "all party” version of this statute remains a minority view; many states and the federal government continue to require the consent of only a single party. See, e.g., 18 U.S.C.A. § 251 l(2)(a)(iii)(d) (2012); see generally Carol M. Bast, What’s Bugging You? Inconsistencies and Irrationalities of the Law of Eavesdropping, 47 DePaul L.Rev. 837 (1998) (surveying state-by-state consent laws).

. Arguably, the societal-approval test is actually a determination that section 934.03(1) is unconstitutional as applied under the strict scrutiny analysis required by article I, section 23 of the Florida Constitution. See Von Eiff v. Azicri, 720 So.2d 510, 514 (Fla.1998). In other words, it is arguably unconstitutional for the legislature to intrude upon the stepdaughter’s right to record these conversations in private when the recording is necessary to protect her from being victimized. Whether that analysis would also apply to the admissibility of these recordings in a public trial may be a different question.