424 So.2d 163 (1983)
The STATE of Florida, Appellant,
v.
Manuel CAMPANPONI, Appellee.
No. 81-132.
District Court of Appeal of Florida, Third District.
January 4, 1983.
Jim Smith, Atty. Gen. and Paul Mendelson, Asst. Atty. Gen., for appellant.
No appearance for appellee.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
PER CURIAM.
The state appeals from a pre-trial interlocutory order entered below suppressing certain evidence obtained by a search and seizure and from an order dismissing an information. We have jurisdiction to entertain this appeal. Art. V, § 4(b)(1), Fla. Const.; Fla.R.App.P. 9.140(c)(1)(A), (B).
The relevant facts pertaining to the search and seizure are as follows. On August 18, 1980, the defendant Manuel Campanponi presented himself for a commercial airline boarding at a security check area on concourse G of the Miami International Airport. The defendant showed his airline ticket to the security personnel stationed at the checkpoint. The ticket had been marked "P" by an unidentified airline ticket agent based on factors undisclosed in this record. The "P" notation, under routine airport security procedures, signified that the defendant fit the airline hijacker profile. A security guard, relying on this notation, patted down the defendant for weapons without allowing him to go through the metal detector at the checkpoint. The guard felt a lump in the defendant's sock and motioned to a nearby police officer. The police officer responded and seized a bag of cocaine from the defendant's sock. The trial court suppressed this bag of contraband drugs as having been seized in violation of the defendant's Fourth Amendment rights, and granted the defendant's subsequent motion to dismiss the information. This appeal follows.
The leading decision in Florida on airport security searches is Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). *164 In that case, the Florida Supreme Court held that the search of an air traveler at a security checkpoint for weapons, explosives, or other devices which could be used to hijack an airplane prior to boarding a commercial airliner does not violate the air traveler's Fourth Amendment rights for two reasons. First, it is said that such a search does not constitute an invasion of the air traveler's reasonable expectation of privacy, thereby making the Fourth Amendment entirely inapplicable. Second, it is said that such a search is, in any event, entirely reasonable, thereby satisfying the Fourth Amendment's reasonableness standard. The Court, speaking through Mr. Justice (now Chief Justice) Alderman, stated in relevant part as follows:
"Shapiro contends that the search and seizure violated his fourth amendment rights and that the cocaine should have been suppressed because the detective did not have sufficient probable cause to search his luggage. For several reasons, we hold that probable cause was not a prerequisite to this search in the security area of the airport, conducted for the limited purpose of discovering weapons, explosives, or other devices which could have been utilized to hijack an airplane.
In order for Shapiro to claim that his fourth amendment rights were violated, he must first establish that he had a reasonable expectation of privacy to be free from this particular intrusion by the detective. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A reasonable expectation of privacy under a given set of circumstances depends not only upon one's actual subjective expectation of privacy but also upon whether society is prepared to recognize this expectation as reasonable. Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed. 220 (1979); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Here, the defendant clearly failed to demonstrate that he had a reasonable expectation of privacy to be free from the particular intrusion involved in this case  a search for what the detective thought was a bomb. Shapiro testified that since 1971, he had boarded airplanes at least twenty times and that he was aware that there is a checkpoint at every airport where carry-on baggage must be submitted for inspection. He further testified that he had seen baggage opened at the security stations and that he was fully aware that his could be opened. He knew that for his protection and for the protection of other air passengers, searches were conducted to prevent prospective hijackers from boarding airplanes. By his own testimony, he established that he had no subjective reasonable expectation that his baggage would not be searched.
Additionally, we conclude that even if Shapiro had some subjective expectation of privacy, society is not prepared to recognize such expectation as reasonable. At this point in time when airplane hijacking is at a crisis level, such an expectation, to be free from the limited intrusion brought about by the screening process utilized in the boarding area of the airports, is not justifiable under the circumstances. One who enters the boarding area of the airport knows or should know that he is subject to being searched for weapons or other devices which could be used for hijacking. Notices posted in front of boarding areas inform prospective air passengers that all are subject to anti-hijacking searches. These searches are not directed against individuals but rather are a part of a general screening process to avoid the carrying of weapons or explosive devices onto an aircraft.
Since Shapiro did not demonstrate that he had a reasonable expectation of privacy, the fourth amendment is not implicated, and probable cause was not requisite to justify the search.
Alternatively, assuming that Shapiro's fourth amendment rights were implicated in this search, we find that the present search conducted for the limited purpose of preventing an airplane hijacking was proper under the fourth amendment. *165 Two separate concepts justify this finding.
One of the exceptions to the fourth amendment requirement of a probable cause basis for a search is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). This consent must be free and unconstrained, and the question of voluntariness is a question of fact to be determined from the totality of the circumstances. See Norman v. State, 379 So.2d 643 (Fla. 1980). Analyzing in depth the subject of consent searches, the Supreme Court of the United States in Schneckloth determined that while knowledge of the right to refuse consent is a factor to be taken into account, the government need not establish such knowledge as an indispensable requisite to effective consent. The Court refused to extend the requirement of a knowing and intelligent waiver to the constitutional guarantee against unreasonable searches and seizures since, it explained, the protections of the fourth amendment have nothing to do with promoting the ascertainment of truth at a criminal trial. 412 U.S. at 241-42, 93 S.Ct. at 2055. See also Interest of R.L.J., 336 So.2d 132 (Fla. 1st DCA 1976).
Looking to the totality of the circumstances in the present case, we find that Shapiro voluntarily consented to the search. As previously stated, he was fully aware that upon entering the security boarding area of the airport, he was subject to a security search for weapons or other devices which could be employed to hijack an airliner. He also testified that he knew he did not have to go through the checkpoint and did not have to board the plane, or that he did not have to carry this suitcase onto the plane. He willingly chose to do so and thereby consented to the search of his person and baggage for the limited purpose of discovering weapons, explosives, or other devices which could be utilized to hijack an airplane. The fact that drugs instead of weapons were found, however, does not require their suppression since the search was proper. See Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); United States v. Skipwith, 482 F.2d 1272 (5th Cir.1973).
Alternatively, even in the absence of consent, this limited security boarding area search would not have violated Shapiro's fourth amendment rights. The fourth amendment provides that the people are entitled to be secure from unreasonable searches and seizures. The specific content and incidents of the fourth amendment guarantee are shaped by the context in which it is asserted. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To assess the reasonableness of security checks at airport boarding areas, we must balance the governmental interest justifying the governmental intrusion against the invasion which occurs as a result of the search. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).
... .
We hold that these searches are reasonable if conducted solely for the purpose of discovering whether a prospective air passenger poses an immediate threat to air commerce. Although the initiating purpose of the search is limited to the detection of a would-be hijacker, the search may be extensive because the airplane hijacker's weaponry could be any of a number of easily concealed things including plastic explosives or gasoline. The fact that an object was not metal and therefore did not set off the magnetometer at the security boarding station does not mean the search must end at that point. See United States v. Bell, 464 F.2d 667 (2d Cir.1972), cert. denied, Bell v. United States, 409 U.S. 991 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). So long as the object of the search is prevention of an airplane hijacking, the search is reasonable and proper and does not require probable cause for its foundation. But, as Judge Clark said in United States v. Skipwith:

`[c]ertainly all citizens look forward to the day when skyjackings and their *166 sequels, airport search and security measures, cease. When the threat of air piracy disappears the standards of reasonableness which we here recognize will go with it. Until that time arrives, however, the portent for evil supplies the requisite Fourth Amendment reasonableness to justify the search of any person who presents himself at a boarding gate to enter an aircraft.'
482 F.2d at 1279." Id. at 347-48, 350.
Applying these principles to the instant case, it is clear beyond any hope of successful contradiction that the search in the instant case did not violate the defendant's Fourth Amendment rights as interpreted in Shapiro. The pat-down search of the defendant was plainly a security search for weapons of an air traveler about to board a commercial airliner. The search, therefore, did not constitute an invasion of the defendant's reasonable expectation of privacy under the Fourth Amendment, and even if it did, the search here satisfied the Fourth Amendment's reasonableness standard. It appears clear to us that under Shapiro a security search for weapons and the like of an air traveler about to board a commercial airliner is akin to a border search, see e.g., Morales v. State, 407 So.2d 321, 327 (Fla.3d DCA 1981); except for an exceptionally intrusive search (i.e., a body cavity search), where some evidence of wrongdoing might be required, the security airport search does not run afoul of the Fourth Amendment. See Oishi v. State, 400 So.2d 480 (Fla. 5th DCA 1981).
The orders under review are reversed and the cause is remanded to the trial court with directions to (a) reinstate the information filed herein, (b) deny the defendant's motion to suppress, and (c) conduct further proceedings not inconsistent with this opinion.
Reversed and remanded.