530 So.2d 405 (1988)
The STATE of Florida, Appellant,
v.
Maritza Altaerracia BAEZ, Appellee.
No. 87-73.
District Court of Appeal of Florida, Third District.
August 23, 1988.
*406 Robert A. Butterworth, Atty. Gen. and Debora J. Turner, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender and Howard K. Blumberg, Asst. Public Defender, for appellee.
Before HUBBART, NESBITT and JORGENSON, JJ.
HUBBART, Judge.
This is an appeal by the state from an order granting a motion to suppress a quantity of cocaine which was seized from the defendant by airport security officials at the Miami International Airport. The central question presented for review is whether an air traveler who activates a magnetometer, indicating the presence of an unknown metal object on his person during an otherwise valid airport security checkpoint search under Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981), may be searched by airport security officials for the said metal object under the Fourth Amendment  where, as here, the security official conducting the search unjustifiably *407 believes that the said metal object constitutes contraband drugs. For the reasons which follow, we conclude that such a search constitutes a valid airport security checkpoint search under Shapiro, and accordingly reverse the order under review.

I
The relevant facts of the search and seizure in this case are as follows. On August 16, 1986, at approximately 7:50 A.M., the defendant Maritza Baez passed through the metal detector, a magnetometer, at the Concourse D screening area at the Miami International Airport, as required in order to board a People's Express flight to New York City. The defendant activated the metal detector upon initially passing through, and Sandra Lopez, the Wackenhut security officer on duty at the magnetometer, asked the defendant to walk through again. After activating the metal detector a second time, the defendant was screened by Ms. Lopez with the use of a hand-held magnetometer ("wand"), which continued to alert in the abdominal area of the defendant. After the defendant refused to reveal the metal object under her clothing, Sandra Lopez suspected the object might be a weapon and called her supervisor, Joyce Jones, for assistance.
Ms. Jones responded and advised the defendant that a further search would be required because of the activation of the metal detector. Ms. Jones then took the defendant to a nearby partitioned area and conducted a pat-down search of the defendant's abdominal area where she felt something "hard"; Jones indicated unequivocally that at that point she "knew" the defendant was carrying drugs under her blouse  although, as the trial court later concluded, there was no factual basis for this belief. Ms. Jones then requested that the defendant lift up her blouse, but the defendant refused.
Ms. Jones then advised the defendant that they would enter the ladies' restroom so that Jones could conduct a more extensive body search of the defendant. Ms. Jones then proceeded to the restroom with the defendant and another Wackenhut security guard. The defendant entered a toilet stall, with the stall door open, in the restroom. Ms. Jones then observed the defendant remove two packages ultimately determined to contain cocaine from under her blouse and attempt to drop them into a metal container. The packages fell to the floor where Ms. Jones confiscated them. Officer R. Perilman of the Metro-Dade Police Department was then summoned to the scene and arrested the defendant for unlawful possession of cocaine.
The defendant was subsequently charged by information with trafficking in cocaine [§ 893.135, Fla. Stat. (1985)]. The defendant entered a plea of not guilty and filed a motion to suppress the cocaine seized from her. The trial court conducted a hearing on the motion to suppress and received in evidence several depositions of certain witnesses; no live testimony or other evidence was received by the trial court on the motion to suppress. Thereafter, the trial court entered a detailed order in which it made certain findings of fact, as basically stated above, concerning the instant search.
It was the trial court's specific finding that Joyce Jones, the Wackenhut security supervisor, took the defendant into the ladies' restroom for the sole purpose of searching for drugs, that Ms. Jones did not suspect the defendant of carrying weapons or explosives and did not search the defendant for that purpose. Based on this finding of fact, the trial court concluded that the full-blown search of the defendant's person in the ladies' restroom was not a proper airport security search under the Fourth Amendment as interpreted in Shapiro v. State, 390 So.2d 344 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). The trial court further concluded that the search was not otherwise based on probable cause, and, accordingly, suppressed the cocaine seized in this search. The state appeals.

II
The leading decision in Florida on airport security searches is Shapiro v. State, 390 So.2d 344 *408 (Fla. 1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1519, 67 L.Ed.2d 818 (1981). In that case, the Florida Supreme Court held that the search of an air traveler at a security checkpoint in an airport for weapons, explosives, or other devices which could be used to hijack an airliner does not violate the air traveler's Fourth Amendment rights, and that probable cause is not a prerequisite to such a search. In particular, (1) an x-ray monitor search of the air traveler's carry-on suitcase and (2) a subsequent physical search of the said suitcase, when the x-ray revealed the possible presence of an explosive device, was upheld in Shapiro. The Court reached this result for two alternative reasons.
First, the Court concluded that such a security search does not constitute an invasion of the air traveler's reasonable expectation of privacy, thereby making the Fourth Amendment entirely inapplicable. 390 So.2d at 347-48. Second, the Court concluded that, even if the Fourth Amendment was applicable, such a security search was entirely reasonable based on an implied consent and balancing rationale, thereby satisfying the Fourth Amendment's reasonableness standard. 390 So.2d at 349-50. Central to the Court's entire reasoning and holding, however, was that the security search in question must be "conducted for the limited purpose of discovering weapons, explosives, or other devices which could [be] utilized to hijack an airplane." 390 So.2d at 347.
The post-Shapiro cases in the District Courts of Appeal have consistently upheld airport security checkpoint searches of air travelers and their carry-on luggage in a variety of factual contexts. State v. Merritt, 519 So.2d 36 (Fla. 3d DCA 1987) (search of person), rev. denied, 525 So.2d 879 (Fla. 1988); State v. Perez, 509 So.2d 1287 (Fla. 3d DCA 1987) (search of person); State v. Simpson, 443 So.2d 209 (Fla. 3d DCA 1983) (search of person); State v. Campanponi, 424 So.2d 163 (Fla. 3d DCA 1983) (search of person); Oishi v. State, 400 So.2d 480 (Fla. 5th DCA) (search of carry-on briefcase), rev. denied, 408 So.2d 1095 (Fla. 1981). Moreover, otherwise valid airport security checkpoint searches under Shapiro have been upheld, although the searching officer also suspected the air traveler of carrying contraband drugs. State v. Merritt; State v. Simpson. It therefore may be safely asserted that "under Shapiro a security search for weapons and the like of an air traveler about to board a commercial airliner is akin to a border search, see e.g., Morales v. State, 407 So.2d 321, 327 (Fla. 3d DCA 1981); except for an exceptionally intrusive search (i.e., a body cavity search), where some evidence of wrongdoing might be required, the security airport search does not run afoul of the Fourth Amendment." State v. Campanponi, 424 So.2d 163, 166 (Fla. 3d DCA 1983).

III
Turning now to the instant case, we conclude that the search of the defendant in the ladies' restroom did not violate the defendant's Fourth Amendment rights, contrary to the trial court's conclusion, because the subject search was a valid airport security checkpoint search under Shapiro v. State. As an aside, however, we entirely agree with the trial court that Ms. Lopez and Ms. Jones, the airport security personnel involved in this search, were acting under federal aviation law and regulations such that their actions in this case constitute governmental action implicating the search and seizure guarantee of the Fourth Amendment. United States v. Davis, 482 F.2d 893 (9th Cir.1973); United States v. Gorman, 484 F. Supp. 529, 531 (S.D.Fla. 1980).

A
Without question, the magnetometer searches of the defendant and the subsequent pat-down search of the defendant outside the ladies' restroom were perfectly legitimate airport security checkpoint searches conducted for the purpose of determining whether the defendant was carrying a weapon or explosive device on her person. The defendant attempted to board a commercially scheduled airline at the Miami International Airport and was properly required to walk through the metal *409 detector (magnetometer) prior to boarding the flight. The defendant activated the magnetometer, indicating that she had an unknown metal object on her person. She was thereafter required to repeat this walk-through procedure and again activated the magnometer. Sandra Lopez, the security officer on duty, then screened the defendant with a hand-held magnetometer ("wand") which alerted in the abdominal area of the defendant. The defendant thereafter declined to display to Ms. Lopez the metal object which was continually activating the metal detector.
Based on these circumstances, Ms. Lopez reasonably suspected the defendant of carrying a weapon, and therefore summoned her supervisor, Joyce Jones, for assistance. Ms. Jones, in turn, quite properly conducted a pat-down search of the defendant and discovered a "hard" object beneath the defendant's clothing in the abdominal area. Based on Shapiro and its progeny, it is clear beyond any doubt that the airport security searches of the defendant up to this point did not violate the defendant's Fourth Amendment rights.

B
Although not entirely free from doubt, we do not think that Ms. Jones' correct, but unjustified hunch after the pat-down search that the defendant was carrying contraband drugs, rather than a weapon, destroyed the validity of this otherwise valid airport security checkpoint search, or precluded Ms. Jones from further searching the defendant's person in the ladies' restroom for the "hard" metallic object which was hidden beneath the defendant's clothing. Obviously, such a metallic object might very well have been a weapon, as Ms. Lopez reasonably suspected; and there was utterly no basis for Ms. Jones' contrary hunch that it was contraband drugs, as the trial court correctly found. We do not think airline passenger safety, which is the entire governmental justification for these searches, should be compromised by the mental quirks and unjustified hunches of the security personnel who conduct such searches; this is particularly true when, as here, the security officials involved differ as to what they think the air traveler may be carrying. Surely, it would have been a travesty if Ms. Jones, based on her unjustified hunch, had discontinued her investigation after the pat-down search and allowed the defendant to board the airplane to New York City with a hard metallic object under the defendant's clothing. If the hunch had proven wrong and the aircraft had been subsequently hijacked, airline passengers might very well have lost their lives.
The Fourth Amendment is not a suicide pact and does not require airline security officials to engage in such reckless conduct with airline passengers' safety. We therefore conclude that an air traveler, who activates a magnetometer indicating the presence of an unknown metal object on his person during an otherwise valid airport security checkpoint search under Shapiro, may be searched by airport security officials for the said metal object without violating the air traveler's Fourth Amendment rights; this result is not changed by the fact that the security official conducting the search unjustifiably believes that the unknown metal object constitutes contraband drugs.
We have not overlooked the specific language in Shapiro which states that such airport security searches must be "conducted for the limited purpose of discovering weapons, explosives, or other devices which could [be] utilized to hijack an airplane." 390 So.2d at 347. We conclude, however, that this limitation has been fully satisfied in the instant case. The entire search procedure followed herein by the airport security personnel  including the magnetometer searches, pat-down search, and full-blown search of the defendant  was obviously designed to discover hidden weapons and the like which might be used to hijack an airline. The fact that Ms. Jones formed an unjustified opinion during these necessary security procedures as to what the defendant was carrying does not destroy the essential security nature of the entire search procedure employed. After it was discovered that the defendant was carrying a hidden metallic object on her person, she *410 was required to disclose that metallic object for obviously pressing security reasons, regardless of Ms. Jones' unjustified hunch to the contrary.
For the above-stated reasons, the order under review is reversed and the cause is remanded to the trial court for further proceedings.