679 So.2d 316 (1996)
The STATE of Florida, Appellant,
v.
J.A., a juvenile, Appellee.
No. 95-2913.
District Court of Appeal of Florida, Third District.
August 21, 1996.
Rehearing Denied October 2, 1996.
*317 Robert A. Butterworth, Attorney General, and Michael J. Neimand, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Assistant Public Defender, for appellee.
Phyllis O. Douglas, for The School Board of Dade County, Florida as amicus curiae.
Blaire & Cole, Coral Gables, for Dade County Council of PTS-PTSA as amicus curiae.
Corse, Belle & Miller, for Florida Association of Criminal Defense Lawyers as amicus curiae.
Steven M. Potolosky and Paul M. Rashkind, Miami, for Florida Association of Criminal Defense Lawyers-Miami Chapter as amicus curiae.
Akerman, Senterfitt & Eidson, and Lida Rodriguez-Taseff, Miami, for The American Civil Liberties Union Foundation of Florida, Inc. as amicus curiae.
Before NESBITT, GREEN and SHEVIN, JJ.
SHEVIN, Judge.
The State of Florida appeals an order granting J.A.'s motion to suppress physical evidence discovered during a weapons search at a public high school. We treat the appeal as a petition for writ of certiorari.[1] We find *318 that the trial court's order departs from the essential requirements of law, and therefore grant certiorari and quash the order.
Responding to the growing presence of firearms and other weapons in public schools, and the dangerous and deleterious effects of these weapons on the learning environment, the Dade County School Board ["Board"] adopted a policy authorizing random searches of students in high school classrooms with hand-held metal detector wands. To carry out the policy, the Board enacted various guidelines for the search procedures. The searches are designed to deter and curtail the presence of weapons in schools.
In analyzing the central issue in this case, we are not unmindful that metal detector searches have become commonplace in everyday living. Persons who visit courthouses, or travel on airplanes are routinely screened for weapons by metal detectors. These searches are deemed constitutional. State v. Baez, 530 So.2d 405 (Fla. 3d DCA 1988)(airport magnetometer search constitutional); Legal Aid Soc'y of Orange County v. Crosson, 784 F.Supp. 1127 (S.D.N.Y.1992)(courthouse magnetometer search constitutional). The central issue in this case is whether a search conducted pursuant to the Board's policy violated J.A.'s Fourth Amendment rights.
To execute the policy, the Board hired an independent security firm to conduct the searches. The firm employees (referred to as a "search team") arrive at a randomly selected secondary school, roll dice to choose a sector of the school, and then roll the dice again to determine which classroom in the sector to search. The search team is accompanied by a school administrator. There are signs posted in the school informing students that these random searches are conducted.
When the team enters the selected classroom, a team member informs the students about the search's purpose and procedures. The students are segregated by gender and asked to remove all metal objects from their persons. The students are scanned with the wand by a team member of the same sex. If the wand indicates the presence of metal the student is asked to remove any object in that area which may be triggering the device. If the wand again alerts to the presence of metal, the area is patted down. All coats, bags and other items are also scanned with the wand. If the wand alerts, the team member looks inside the item for weapons. A student may refuse to be searched, but refusal may subject the student to discipline. If the search reveals a school policy violation, the student may suffer disciplinary action. If contraband is discovered, the school notifies the police officers who are routinely assigned to patrol school campuses.[2] The student may be arrested.
On the day J.A. was arrested, the search team selected and entered J.A.'s classroom with the assistant principal. As the team was explaining the search procedure, the assistant principal noticed that a jacket was passed to the back of the room and was placed on a shelf. A team member retrieved the jacket, scanned it, and discovered a gun. J.A. was identified as the jacket's owner. He was taken to an office where he admitted owning the jacket but denied owning the gun, and he asserted that the jacket was behind him, but he did not pass it back.
The State filed a delinquency petition against J.A. for carrying a concealed firearm, possession of a firearm on school property, and possession of a firearm by a minor. J.A. filed a motion to suppress the firearm asserting that the search was unlawful. In the order granting the motion to suppress, the trial judge found that the administrative search was a police search, that it was not based on probable cause and was, therefore, unconstitutional.
The court also found that, even if the search only required reasonable suspicion, the policy's search method was not sufficiently effective to outweigh the severe intrusion into the students' privacy interests.
We note that only three jurisdictions (New York, Pennsylvania, and Illinois) have addressed this issue. The courts have upheld, as constitutional, magnetometer searches and hand-held metal detector searches of students. *319 In re S.S., ___ Pa. Super. ___, 680 A.2d 1172 (1996)(hand-held wand search of student by police officer); People v. Pruitt, 278 Ill.App.3d 194, 214 Ill.Dec. 974, 662 N.E.2d 540 (1996)(magnetometer search of student by police officers), appeal denied, 167 Ill.2d 564, 217 Ill. Dec. 668, 667 N.E.2d 1061 (1996); In re F.B., 442 Pa.Super. 216, 658 A.2d 1378 (1995)(handheld wand search of student by police officers), appeal granted, 542 Pa. 647, 666 A.2d 1056 (1995); People v. Dukes, 151 Misc.2d 295, 580 N.Y.S.2d 850 (N.Y.Crim.Ct.1992)(same). See Thompson v. Carthage School Dist., 87 F.3d 979 (8th Cir. 1996)(§ 1983 damages do not lie against school for suspension based on possession of contraband discovered during hand-held metal detector search).
The case before us involves a random, suspicionless, administrative search of public high school students in "furtherance of a valid administrative purpose."[3]State v. Nadeau, 395 So.2d 182, 185 (Fla. 3d DCA 1980)(administrative search defined)(citing United States v. Davis, 482 F.2d 893 (9th Cir.1973)); Dukes, 580 N.Y.S.2d at 851-52. The legality of this search is governed by the United States Supreme Court's pronouncements in Vernonia School Dist. 47J v. Acton, ___ U.S. ___, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). T.L.O. addressed the propriety of a search based on individualized suspicion that a student had committed a school rule violation. Acton addressed random suspicionless searches of student athletes to detect drug use. In student search cases, the challenge is always how to "strike the balance between the schoolchild's legitimate expectations of privacy and the school's equally legitimate need to maintain an environment in which learning can take place?" T.L.O., 469 U.S. at 340, 105 S.Ct. at 742. Although T.L.O. applies the Fourth Amendment's prohibition of unreasonable searches and seizures to searches conducted by public school officials, "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." T.L.O., 469 U.S. at 341, 105 S.Ct. at 742 (emphasis added).
[T]he ultimate measure of the constitutionality of a governmental search is `reasonableness.' At least in a case such as this, where there was no clear practice, either approving or disapproving the type of search at issue, at the time the constitutional provision was enacted, whether a particular search meets the reasonableness standard `is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'
Acton, ___ U.S. at ___, 115 S.Ct. at 2390 (footnote omitted)(quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639(1989)).
As the following analysis demonstrates, the search we review today satisfies this reasonableness standard. "The first factor to be considered is the nature of the privacy interest upon which the search here at issue intrudes." Acton, ___ U.S. at ___, 115 S.Ct. at 2391. Without question, students in public schools have an expectation of privacy in their persons and personal belongings. T.L.O., 469 U.S. at 338, 105 S.Ct. at 740-41. However, because of the state's custodial and tutorial authority over the student, public school students are subject to a greater degree of control and administrative supervision than is permitted over a free adult. Acton, ___ U.S. at ___, 115 S.Ct. at 2392; Pruitt, 214 Ill.Dec. at 976, 662 N.E.2d at 542 ("The reasonableness inquiry cannot disregard the schools' custodial and tutelary responsibility for children. The State's power over schoolchildren permits a degree of supervision and control that could not be exercised over free adults."). Therefore, "students within the school environment have a lesser expectation of privacy than members of the population generally." T.L.O., 469 U.S. at 348, 105 S.Ct. at 746 (Powell, J., concurring).
The next factor we must weigh is the character of the intrusion at issue. Acton, *320 ___ U.S. at ___, 115 S.Ct. at 2393. The Board has delineated search parameters in its policy to minimize the intrusion into the student's privacy. As stated above, the individuals are asked to remove all metal objects from their pockets and persons to avoid setting off the wand. If the wand detects the presence of metal the student is requested to remove any object in that area. The area is only patted down if the wand again indicates the presence of metal. The Board's search is no broader than metal detector searches upheld in other jurisdictions. In re S.S., ___ Pa. Super. ___, 680 A.2d 1172, 1173, 1996 WL 392112, at *1; Pruitt, 214 Ill.Dec. at 978, 662 N.E.2d at 544; In re F.B., 658 A.2d at 1380; Dukes, 580 N.Y.S.2d at 850-51. This Court finds that the Board's policy and the guidelines enacted to carry it out delineate a search that involves a minimal intrusion into the students' privacy.
Against the backdrop of a student's privacy interest, and the scope of the search, we must consider "the nature and immediacy of the governmental concern at issue here, and the efficacy of this means for meeting it." Acton, ___ U.S. at ___, 115 S.Ct. at 2394. The interest must be one "important enough to justify the particular search at hand...." Acton, ___ U.S. at ___-___, 115 S.Ct. at 2394-95.
"Judges cannot ignore what everybody else knows: violence and the threat of violence are present in the public schools.... Schoolchildren are harming each other with regularity." Pruitt, 214 Ill.Dec. at 980, 662 N.E.2d at 546. The incidences of violence in our schools have reached alarming proportions. In the year prior to the Board's implementation of the search policy, Dade County Public Schools reported both homicides and aggravated batteries as well as the confiscation from students of a very high number of weapons, including handguns.
In 1985, the T.L.O. Court acknowledged that "in recent years, school disorder has often taken particularly ugly forms: drug use and violent crime in the schools have become major social problems." T.L.O., 469 U.S. at 339, 105 S.Ct. at 741. Now, eleven years after T.L.O., the problem has worsened exponentially. The immediacy of the Board's concern for students' safety, and the safety of all school personnel, is certainly well justified. Despite this background of escalating violence, the Board must maintain an environment that fosters learning and growth. In keeping with that obligation, the search policy was effected to deter and curtail the presence of weapons in schools and promote a safe learning environment.
The means the Board has selected to address this severe problem is effective. The logical way to keep weapons out of school is to let the students know that they may be searched for weapons and that possession of weapons in a public high school is not permissible and will be seriously sanctioned.
Although there are alternative methods for detecting weapons (such as a magnetometer), these alternatives are attended by substantial difficulties because of Dade County's open-campus high schools. Moreover, these alternative methods are very time consuming and would disrupt an entire school, as opposed to randomly selected classrooms. The Board has chosen the method it felt would best satisfy the needs of its high schools. The Supreme Court has never declared that "only the `least intrusive' search practicable can be reasonable under the Fourth Amendment." Acton, ___ U.S. at ___, 115 S.Ct. at 2396.
Upon balancing the students' privacy interest, the nature of the search, and the severity of the need met by the search, this Court holds that the Board's policy is both reasonable and constitutional. The administrative search that led to the discovery of the weapon in J.A.'s jacket is constitutional. Therefore, the suppression of the weapon was error.
Since the trial court's order departs from the essential requirements of law, we grant certiorari, quash the order under review, and remand the case to the trial court for further proceedings consistent herewith.
Certiorari granted; order quashed; cause remanded.
NOTES
[1] We grant J.A.'s motion to treat the appeal as a petition for writ of certiorari. The Florida Supreme Court has not promulgated a rule permitting the State to appeal an interlocutory suppression order in a juvenile proceeding. A.N. v. State, 666 So.2d 928 (Fla. 3d DCA 1995). Certiorari is the only relief the State may seek in this case. State v. M.G., 550 So.2d 1122 (Fla. 3d DCA), review denied, 551 So.2d 462 (Fla.1989). We note that Proposed Florida Rule of Appellate Procedure 9.145(c)(1)(B), if adopted, would permit an appeal such as the one the State seeks here. Amendments to the Florida Rules of Appellate Procedure v. 4-Year Cycle, No. 87,134 (Fla. filed Jan. 5, 1996).
[2] The officers are not involved in and are not present during the random searches.
[3] Because this is an administrative search, and there was no police involvement, we need not determine whether probable cause existed to search the jacket.