# Supreme Court of Florida

_____

No. SC13-1248
_____

**RICHARD R. McDADE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[December 11, 2014]

CANADY, J.

In this case, we consider a certified question of great public importance concerning the application of the prohibition under chapter 934, Florida Statutes (2010), on intercepting certain oral communications. Specifically, we consider whether the prohibition applies to recordings of solicitation and confirmation of child sexual abuse when the recordings were surreptitiously made by the child in the bedroom of the accused.

In McDade v. State, 114 So. 3d 465, 467 (Fla. 2d DCA 2013), the Second District Court of Appeal rejected McDade's argument that two recordings of conversations he had in his bedroom with his stepdaughter should have been

suppressed under chapter 934's statutory exclusionary rule. The court also rejected McDade's argument that testimony of the stepdaughter's boyfriend recounting statements of the stepdaughter that McDade had raped her should have been excluded as hearsay. Regarding the recorded conversations, the Second District held "that the narrow factual circumstances of this case do not fall within the statutory proscription of chapter 934." Id. at 469. The Second District concluded that the boyfriend's testimony was non-hearsay because the statements made by the stepdaughter "were introduced to show why the boyfriend encouraged the victim to make the recordings," not for the truth of the matter asserted. Id. at 468-69.

The Second District certified the following question as one of great public importance:

> DOES A RECORDING OF SOLICITATION AND
> CONFIRMATION OF CHILD SEXUAL ABUSE MADE BY THE
> MINOR CHILD VICTIM FALL WITHIN THE PROSCRIPTION OF
> CHAPTER 934, FLORIDA STATUTES (2010)?

Id. at 471. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. In line with the analysis we adopt, we rephrase the certified question as follows:

> DOES A RECORDING OF SOLICITATION AND
> CONFIRMATION OF CHILD SEXUAL ABUSE
> SURREPTITIOUSLY MADE BY THE CHILD VICTIM IN THE
> ACCUSED'S BEDROOM FALL WITHIN THE PROSCRIPTION
> OF CHAPTER 934, FLORIDA STATUTES (2010)?

- 2 -

For the reasons we explain, we answer the rephrased certified question in the affirmative. We also conclude that the Second District erred regarding the boyfriend's testimony concerning statements made by the stepdaughter. We quash the Second District's decision.

## I. BACKGROUND

McDade was arrested and charged with various sex crimes after his then sixteen-year-old stepdaughter reported that he had been sexually abusing her since she was ten years old. Prior to McDade's arrest, his stepdaughter recorded two conversations with McDade. The stepdaughter provided these recordings to law enforcement, and McDade was arrested that same day. Prior to trial, McDade moved to suppress the recordings under chapter 934, Florida Statutes. The trial court denied McDade's motion, and the case proceeded to a jury trial. The recordings were introduced at trial over McDade's objection.

At trial, the State presented the testimony of McDade's stepdaughter, her boyfriend, and multiple law enforcement officers. The State did not introduce any forensic evidence. In defense, McDade testified on his own behalf, and he presented the testimony of his wife and his treating physician. The Second District summarized the facts as follows:

> The victim in this case was born in Mexico in 1994. In 2001, she and her mother moved to Florida. Though their immigration status was a matter of dispute during the trial, the victim testified that she believed that they were illegally in the country. In 2005, the

mother married McDade, who was approximately sixty years of age at the time. The mother testified that the couple never had a sexual relationship because they both had health issues. Indeed, McDade and the mother both testified that he suffered from erectile dysfunction. However, the victim alleged that he sexually abused her over a period of years, threatening that she and her mother would be returned to Mexico if she reported what he was doing.

McDade operated an ice cream truck, and the victim's mother worked as a janitor. During the period of time when the alleged abuse occurred, the victim was typically home alone with McDade for several hours in the afternoon each school day. She testified that on one such afternoon McDade instructed her to come into his bedroom and told her to take off her clothes. He covered her face with a blanket and he penetrated her with both his finger and his penis. She was ten years old at the time. McDade allegedly continued to engage in this conduct weekly until April 2011, when she was sixteen.

Over the years, the victim claimed that she reported this abuse to several people, including her mother, a doctor, and two ministers at her church. Her mother admitted that her daughter reported this abuse to her and that she took her daughter to a doctor. The mother adamantly did not believe her daughter. When pressed about her accusations, the victim recanted on more than one occasion. Perhaps because of her retractions, no one reported her claims even though any person who has reasonable cause to suspect child abuse must report it. See § 39.201, Fla. Stat. (2012). She explained that she retracted her claims due to the fear of being sent to Mexico.

In October 2010, the victim started going out with a boy. Her mother and McDade did not like the boyfriend, and this created conflict within the family. In an effort to prevent her from sneaking out of the house, her mother and McDade made her sleep in a closet near their bedroom. She told her boyfriend that McDade was raping her, and he encouraged her to gather proof of the abuse. He loaned her his MP3 player to use as a recording device. In April 2011, with the MP3 player hidden in her shirt, she approached McDade in his bedroom on two occasions when they were alone after school. She was essentially conducting her own investigation, hoping to prompt McDade into making incriminating statements that she could secretly record as evidence of abuse.

The recordings supported the victim's testimony that McDade would regularly ask her to have sex with him after school. On both

occasions, though he did not use sexually explicit language, he appeared to be asking her to have sex with him. He pressured her by suggesting that if she did not have sex with him he would get physically sick. McDade also indicated he was doing her a favor by not telling her mother that they were having sex because if the mother knew she would take the victim back to Mexico.

Id. at 467-68.

The jury convicted McDade on two counts of sexual battery on a child younger than twelve, two counts of sexual activity with a child by a person in a position of familial or custodial authority, and one count of solicitation of sexual activity with a child by a person in a position of familial or custodial authority. McDade was sentenced to two sentences of life imprisonment for the counts of sexual battery on a child younger than twelve, two sentences of fifteen years of imprisonment for the counts of sexual activity with a child by a person in a position of familial or custodial authority, and five years of imprisonment for the count of solicitation of sexual activity with a minor by a person in familial or custodial authority, with the sentences to run concurrently.

McDade appealed to the Second District, arguing that the trial court erred when it admitted the recordings into evidence and when it permitted the boyfriend to testify about the stepdaughter telling him that McDade raped her. The district court first addressed McDade's hearsay argument. The district court concluded that "[b]ecause the statements in question were introduced to show why the boyfriend encouraged the victim to make the recordings," the boyfriend's

statements did "not constitute hearsay and thus the court did not abuse its discretion in admitting them." Id. at 468-69.

The Second District then rejected McDade's argument that the trial court should have suppressed the recordings under the exclusionary rule of section 934.06, Florida Statutes (2010). The district court relied on State v. Inciarrano, 473 So. 2d 1272 (Fla. 1985)—a case involving an audio recording of a murder taking place—to conclude "that the narrow factual circumstances of this case do not fall within the statutory proscription of chapter 934." McDade, 114 So. 3d at 469, 470. The Second District explained that "the statutory proscription [on recording oral communications] of chapter 934 only applies where the person uttering the communication has a reasonable expectation of privacy in that communication under the circumstances." Id. at 470. The district court then reasoned that:

> As in Inciarrano, this case involves recordings made by a victim of the very criminal acts by which she was victimized. The minor victim recorded McDade soliciting her for sexual acts, as he had done for years. And though the conversation took place in McDade's home, it was also the victim's home. Considering these circumstances and consistent with the analysis and holding in Inciarrano, we conclude that any expectation of privacy McDade may have had is not one which society is prepared to accept as reasonable.

Id. (Emphasis added.)

However, two of the judges on the Second District panel expressed concerns with this Court's decision in Inciarrano and its application to this case. See id. at

471-77 (Altenbernd, J., concurring specially; Villanti, J., concurring in part and dissenting in part). Judge Villanti concurred in the panel's decision regarding McDade's hearsay argument but dissented as to resolution of McDade's argument regarding the recordings. Id. at 475 (Villanti, J., concurring in part and dissenting in part). According to Judge Villanti, section 934.06 is unambiguous and the recordings clearly fall within the statute's plain language. Id. Further, Judge Villanti reasoned that the majority erroneously relied on Inciarrano to reach its result because the cases are factually distinguishable. Id. at 475-76. In Inciarrano, "the court considered 'the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations.' " Id. at 476 (quoting Inciarrano, 473 So. 2d at 1274). Conversely, the recording in this case was made while the defendant "was inside his own bedroom in his own residence." Id.

Judge Altenbernd agreed with the panel's resolution of both issues on appeal, but with reservations:

> Under the "society is prepared to recognize" test, I conclude that in 2011 a person who regularly and consistently abused a teenager in a bedroom of their shared home had no reasonable expectation that their conversations about the abuse would never be recorded. In this modern digital world, any such adult should have expected that eventually a teenage victim would record such conversations in self-defense. Accordingly, I concur in this decision

- 7 -

because Mr. McDade could not reasonably expect his statements to be protected oral communications.

> Despite my concurrence, I frankly share some of Judge Villanti's concerns about the direction that <u>Inciarrano</u> takes us in today's decision.

<u>Id.</u> at 471-72 (Altenbernd, J., concurring specially).

## II. ANALYSIS

In the analysis that follows, we examine the governing statutory provisions in chapter 934, Florida Statutes, discuss the decision in <u>Inciarrano</u>, and answer the rephrased certified question in the affirmative. We then discuss and accept McDade's argument that the trial court erroneously admitted the boyfriend's testimony concerning the stepdaughter's statements.

## A. Chapter 934 and the Recordings

Whether the provisions of chapter 934, Florida Statutes, apply to the recordings at issue in this case—where the facts relevant to the recordings are undisputed—is a question of statutory interpretation. "Judicial interpretations of statutes are pure questions of law subject to de novo review." <u>Johnson v. State</u>, 78 So. 3d 1305, 1310 (Fla. 2012) (citing <u>State v. Sigler</u>, 967 So. 2d 835, 841 (Fla. 2007)). "In construing this statute, this Court must give the 'statutory language its plain and ordinary meaning,' and is not 'at liberty to add words . . . that were not placed there by the Legislature.' " <u>Exposito v. State</u>, 891 So. 2d 525, 528 (Fla. 2004) (quoting <u>Seagrave v. State</u>, 802 So. 2d 281, 286 (Fla. 2001); <u>Hayes v. State</u>,

750 So. 2d 1, 4 (Fla. 1999)). "Where the statute's language is clear and unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent." Johnson, 78 So. 3d at 1310 (quoting Fla. Dep't of Children & Family Servs. v. P.E., 14 So. 3d 228, 234 (Fla. 2009)).

Section 934.03(1), Florida Statutes (2010), contains a general prohibition on the interception of any wire, oral, or electronic communications. Section 934.02(2), Florida Statutes (2010), defines the term "oral communication" for purposes of chapter 934 as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication."

Section 934.03(2), Florida Statutes (2010), contains a list of specific exceptions to the general prohibition in section 934.03(1). One of these exceptions is for situations in which all parties to the conversation have consented. § 934.03(2)(d), Fla. Stat. (2010). None of the exceptions allow for the interception of conversations based on one's status as the victim of a crime. The State does not argue that any of the exceptions listed in section 934.03(2) are applicable in this case.

Section 934.06 provides that the contents of any improperly intercepted communication may not be used as evidence:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter. The prohibition of use as evidence provided in this section does not apply in cases of prosecution for criminal interception in violation of the provisions of this chapter.

This Court analyzed these statutory provisions in State v. Walls, 356 So. 2d 294 (Fla. 1978). In Walls, "the alleged victim of extortionary threats, electronically recorded a conversation" between himself and the defendants. Id. at 295. The Court concluded that the recording was inadmissible under section 934.06, Florida Statutes (1975). The Court explained:

We agree with the trial court that an extortionary threat delivered personally to the victim in the victim's home is an "oral communication" within the definition of Section 934.02(2), Florida Statutes (1975); that pursuant to Section 934.03, Florida Statutes (1975), the electronic recording of such "oral communication" without the consent of all parties to the communication was prohibited; and that Section 934.06, Florida Statutes (1975), expressly prohibits the use of such electronic recording as evidence. The subject electronic recording did not fall within any of the situations permitting interception delineated in Section 934.03(2), Florida Statutes (1975). Section 934.06, Florida Statutes (1975), contains no exception to the prohibition against use of the illegally intercepted wire or oral communication as evidence.

Id. at 296.

Similarly, under the definition of oral communication provided by section 934.02(2), Florida Statutes (2010), McDade's conversations with his stepdaughter

in his bedroom are oral communications. The facts related to the recorded conversations support the conclusion that McDade's statements were "uttered by a person exhibiting an expectation that [his] communication [was] not subject to interception" and that McDade made those statements "under circumstances justifying" his expectation that his statements would not be recorded. § 934.02(2), Fla. Stat. (2010). The recordings were made surreptitiously. McDade did not consent to the conversations being recorded, and none of the other exceptions listed in section 934.03(2) apply. The recordings, therefore, were prohibited. Because the recordings impermissibly intercepted oral communications, the recordings are inadmissible under section 934.06, Florida Statutes (2010).

The facts of Inciarrano are in important ways different from those in both Walls and the instant case. In Inciarrano, the trial court had determined that the "statements were not made under circumstances justifying an expectation to privacy," based on factual circumstances including "the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations." 473 So. 2d at 1274. Thus, the recording was made in the victim's place of business—a "quasi-public" place—and the recording device was visible. In addition, the recording contained sounds of the crime that were not "oral communications." Arguably, the

- 11 -

recording was admitted at trial not for the "contents" of any "oral communications." The recording simply revealed the presence of the defendant—from the sound of his voice—and the sounds that accompanied the commission of the crime—that is, "five shots being fired . . . several groans by the victim, the gushing of blood, and the victim falling from his chair." Id. Conversely, the recordings at issue in this case were made in McDade's bedroom, the recording device was hidden under the stepdaughter's shirt, and the recordings contain conversations between McDade and his stepdaughter. Because of the differences in the location, visibility of the recording device, and content of the recordings at issue in Inciarrano, it presented a set of circumstances that are starkly different from those present here.

The reasoning of Inciarrano turns, however, on the Court's conclusion that any subjective expectation of privacy that Inciarrano had was unjustified because it was not an expectation "that society is prepared to recognize as reasonable." Id. at 1275. In reaching this conclusion, the Court focused on the fact that Inciarrano went to the victim's office "to do him harm" and on Inciarrano's resulting status as a "trespasser." Id. The holding of Inciarrano thus is a narrow holding based on the view that a trespasser cannot have a justified expectation that his utterances in the premises where he trespasses are not subject to interception. Cf. United States v. Curlin, 638 F.3d 562, 565 (7th Cir. 2011) (concluding that defendant who had

- 12 -

previously been evicted from residence had "no legitimate expectation of privacy in the residence"); United States v. McRae, 156 F.3d 708, 711 (6th Cir. 1998) (concluding that defendant who squatted in a vacant house "did not have a legitimate expectation of privacy by virtue of having stayed a week in the vacant premises that he did not own or rent"); United States v. Gale, 136 F.3d 192, 195-96 (D.C. Cir. 1998) (concluding trespassing defendant "lacked the 'legitimate expectation of privacy' in the premises required to challenge the search"); United States v. Carr, 939 F.2d 1442, 1446 (10th Cir. 1991) (concluding that defendant who occupied motel room that was not registered to defendant or someone he was sharing it with lacked a "legitimate expectation of privacy" under the Fourth Amendment in the motel room).

Inciarrano therefore is not based on a general rule that utterances associated with criminal activity are by virtue of that association necessarily uttered in circumstances that make unjustified any expectation that the utterances will not be intercepted. Nor can the holding in Inciarrano be used as a basis for the decision reached by the Second District, which turns on McDade's status as a person engaged in crimes involving the sexual abuse of a child. We thus do not understand the references in Inciarrano to "whether society is prepared to recognize [an expectation of privacy] as reasonable" to provide a basis for either

such a general rule or the view adopted by the Second District.  <u>Inciarrano</u>, 473 So. 2d at 1275.

The whether-society-is-prepared-to-recognize formulation has its genesis in the Fourth Amendment context.  It first appears in Justice Harlan's concurrence in <u>Katz v. United States</u>, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), in his discussion of the objective expectation of privacy element of Fourth Amendment analysis.  This formulation cannot be understood to justify a categorical rule that persons involved in criminal activities have no justified expectation of privacy in conversations related to those activities.  Such a categorical rule makes no sense either in the Fourth Amendment context or under the definition of "oral communication" in section 934.02(2).  The result in <u>Katz</u> itself—the suppression of recordings made by the government of telephone conversations relating to illegal gambling—illustrates this point regarding the meaning of the whether-society-is-prepared-to-recognize formulation.

"Privacy expectations do not hinge on the nature of [a] defendant's activities—innocent or criminal.  In fact, many Fourth Amendment issues arise precisely because the defendants were engaged in illegal activity on the premises for which they claim privacy interests."  <u>United States v. Fields</u>, 113 F.3d 313, 321 (2d Cir. 1997) (internal citation omitted); <u>see also</u> <u>United States v. Pitts</u>, 322 F.3d 449, 458-59 (7th Cir. 2003) ("We may not justify the search after the fact, once we

know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant's activities, whether innocent or criminal. . . . If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes.").

It may well be that a compelling case can be made for an exception from chapter 934's statutory exclusionary rule for recordings that provide evidence of criminal activity—or at least certain types of criminal activities. But the adoption of such an exception is a matter for the Legislature. It is not within the province of the courts to create such an exception by ignoring the plain import of the statutory text.

### B. Hearsay

McDade's argument that the trial judge erroneously permitted the boyfriend to testify about inadmissible hearsay statements is reviewed under an abuse of discretion standard. "A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. The trial court's discretion is constrained, however, by the application of the rules of evidence and by the principles of stare decisis." Hayward v. State, 24 So. 3d 17, 29 (Fla. 2009) (internal citations omitted).

In <u>Penalver v. State</u>, 926 So. 2d 1118, 1131-32 (Fla. 2006), the Court

explained that:

> Hearsay is defined in section 90.801(1)(c), Florida Statutes (2005), as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to <u>prove the truth of the matter asserted.</u>" (Emphasis added.)  See also <u>Hernandez v. State</u>, 863 So. 2d 484 (Fla. 4th DCA 2004).  Thus, if the statement is offered for the truth of the facts contained in the statement, then the statement is hearsay and must fall within one of the recognized hearsay exceptions outlined in section 90.803 to be admitted into evidence.  <u>See</u> <u>Hutchinson v. State</u>, 882 So. 2d 943, 950-51 (Fla. 2004).  However, if the statement is offered for some purpose other than its truth, the statement is not hearsay and is generally admissible if relevant to a material issue in the case.  <u>See</u> <u>Harris v. State</u>, 843 So. 2d 856 (Fla. 2003); <u>State v. Baird</u>, 572 So. 2d 904 (Fla. 1990).

Here, the boyfriend's testimony that the stepdaughter "told me that she was being

raped when she was younger" was hearsay.

The Second District concluded that the boyfriend's testimony was offered

not to establish the truth of the matter asserted by the stepdaughter but to show

why the boyfriend assisted the stepdaughter in making the recordings.  <u>See</u>

<u>Krampert v. State</u>, 13 So. 3d 170, 174 (Fla. 2d DCA 2009) (concluding that out of

court statements were not hearsay when they were introduced to explain

subsequent conduct rather than to prove the truth of the matter asserted).  Given

our determination that the recordings were not admissible, this justification for the

admission of the stepdaughter's statement collapses.  The boyfriend's explanation

of why he assisted the stepdaughter in making the inadmissible recordings is

- 16 -

totally irrelevant. The State asserted no other basis in its brief to this Court for admitting the testimony. Therefore, the trial court abused its discretion in denying McDade's hearsay objection.

### III. CONCLUSION

We thus conclude that the recordings should have been suppressed under section 934.06, and the boyfriend's testimony should have been excluded. We answer the rephrased certified question in the affirmative, quash the decision of the Second District, and remand this case to the Second District to reverse McDade's convictions and sentences. McDade is entitled to a new trial.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

Second District - Case No. 2D11-5955

(Lee County)

Christopher E. Cosden, Fort Myers, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Robert Jay Krauss, Bureau Chief, and Christina Zuccaro, Assistant Attorney General, Tampa, Florida,

for Respondent

Thomas Richard Julin and Patricia Acosta of Hunton & Williams LLP, Miami, Florida, on behalf of the Florida Press Association and the Florida Society of News Editors,

for Amici Curiae