GROSSHANS, J.
After trial, David Smith, II was convicted of first-degree murder. On appeal, Smith argues that the trial court erred by admitting a recorded telephone conversation in violation of the Florida wiretap statute. See Ch. 934, Fla. Stat. (2016). We conclude that the evidence was improperly admitted, but it constituted harmless error beyond a reasonable doubt.[1] As a result, we affirm the conviction and sentence.
I. BACKGROUND INFORMATION
The State charged Smith with the first-degree murder of a twenty-month-old child who was in his care on the afternoon that she died.
During trial, the State sought to introduce a recording of a phone conversation between Smith and the child's mother ("Mother") that occurred on the day of the child's death. Mother recorded this conversation using an app on her cell phone. Smith objected to the admission of the recording, arguing that Florida's wiretap statute prohibited its admission. Finding that Smith had no expectation of privacy, the trial court overruled Smith's objection, admitted the recording into evidence, and allowed the State to publish it to the jury.
Although Mother's statements could be understood, Smith's words on the recording were completely unintelligible. As reflected in the trial transcript, the conversation was as follows:
[Mother:] What you doing?
[Smith:] (Unintelligible.)
[Mother:] What?
[Smith:] (Unintelligible.)
[Mother:] Yes.
[Smith:] (Unintelligible.)
[Mother:] What?
[Smith:] (Unintelligible.)
[Mother:] Yeah. Pick her up.
[Smith:] (Unintelligible.)
[Mother:] Yo.
[Smith:] (Unintelligible.)
[Mother:] What is she doing?
[Smith:] (Unintelligible.)
[Mother:] She's still not waking up?
[Smith:] (Unintelligible.)
[Mother:] She's still not waking up?
[Smith:] (Unintelligible.)
[Mother:] Put her in a cold shower, then.
[Smith:] (Unintelligible.)
[Mother:] Yeah?
[Smith:] (Unintelligible.)
[Mother:] Okay. Well, call 911. I'm on my way.
[Smith:] (Unintelligible.)
The State later introduced into evidence, with no objection from Smith, a video recording of a police interview with him in which he stated the following:
*716 [Detective:] You also know about her phone and the phone app; right?
[Smith:] Yeah.
[Detective:] It records every phone call?
[Smith:] Yeah.
After deliberations, the jury found Smith guilty of first-degree murder as charged.
II. Admissibility Under the Wiretap Statute
Whether the Florida wiretap statute applies to a particular recording involves a matter of law and, therefore, is subject to de novo review. See McDade v. State , 154 So.3d 292, 296-97 (Fla. 2014).
Section 934.03(1), Florida Statutes (2016), generally prohibits the intentional interception of oral communications, which is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." Id. § 934.02(2). When a protected oral communication has been intercepted, without consent and in violation of the wiretap statute, no part of the interception may be received into evidence in any court proceeding, including a criminal trial. See id. § 934.06.
Here, Mother recorded her conversation with Smith. The record does not demonstrate that Smith gave Mother permission to record the conversation or that he had reason to know that she would record the call. Accordingly, Mother recorded the conversation in violation of the Florida wiretap statute. Thus, we hold that the trial court erred in admitting this recording.
The State's argument to the contrary does not persuade us. On appeal, the State contends that Smith admitted in the police interview that he knew Mother recorded phone conversations, and therefore, had implicitly consented to the recording. However, the dialogue relied on by the State does not indicate when Smith learned of Mother's practice to record all cell phone conversations. Moreover, no other evidence eliminates the ambiguity. Thus, the record does not support the State's argument.
III. Harmless Error Analysis
We next consider whether admission of the recording was harmless error. See State v. DiGuilio , 491 So.2d 1129, 1135 (Fla. 1986). As the Florida Supreme Court explained, the harmless error test "places the burden on the [S]tate, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict." Id. Application of this test "requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." Id. Based on our examination of the entire record, we conclude that the admission of the recording constituted harmless error.
A. Impermissible Evidence
The recording was used primarily by the State to corroborate Mother's extensive testimony regarding the content of the conversation. No intelligible statements of Smith were discernible in the recording, only the sound of his voice. Nor, during the recording, did Mother accuse Smith of any wrongdoing. In fact, the recording actually supported Smith's theory of innocence. The defense attorney used this recording both in cross examination and in his closing argument to accuse Mother of being the perpetrator of the crime and support Smith's theory of defense.
*717 B. Permissible Evidence
The forensic evidence in this case was extensive and compelling. Three different medical professionals testified as to the child's injuries, which included a blow to the left side of her head that could have, on its own, been lethal; tremendous blunt force impact to her torso that lacerated her liver and injured other organs; and recent injuries to her genital area. The medical professionals also testified that none of the injuries were consistent with a minor accident or fall and all of the injuries were acute at the time of her death, including a large visible hematoma on the side of the child's head. The jury was provided with numerous autopsy photos depicting fresh bleeding across the brain, a torn liver, and broken ribs. A medical expert testified to the seriousness of these injuries and the immediate impact they would have had on the child's ability to function normally, sit upright, ride in a car, maintain consciousness, or be carried without exhibiting extreme pain.
Three lay witnesses testified that they did not notice anything abnormal about the child at the time Mother left for work, including two of Smith's relatives who observed the child after Mother's departure. They testified that the child was sitting upright in the back seat of the vehicle, her eyes were open, she seemed responsive, and she did not exhibit any signs of pain or discomfort. One of the witnesses saw Smith carry the child over his shoulder into the motel room where he was living. Surveillance video was also admitted that showed the conscious child walking to the car and later entering the motel room alone with Smith. Prior to the admission of the recording, Mother testified about the content of the phone conversation she had with Smith, noting that he sounded hysterical and indicated that he could not wake the child.
The jury also heard from numerous other witnesses, including emergency personnel and law enforcement who testified that when they arrived on the scene the child was already cold and stiff, the room smelled strongly of chlorine, and the bedsheets had been removed. The child's blood was found on items in the motel room, but no blood was found in the vehicle in which the child was a passenger earlier that afternoon. The only explanation that Smith initially gave to detectives for the child's injuries was that he put the child in the shower and left momentarily, only to return and find her unconscious. He also testified that she had accidentally been hit by a door the day before.
For the reasons given above, we conclude that there is no reasonable possibility that the admission of the recording contributed to the jury's verdict and, therefore, its admission constituted a harmless error. Accordingly, we affirm the conviction and sentence in this matter.
AFFIRMED.
COHEN, C.J. concurs and concurs specially.
HARRIS, J., dissents with opinion.
COHEN, C.J., concurring, and concurring specially.
I agree with Judges Grosshans and Harris that the trial court erred in admitting the phone call.[2] When the State attempted *718 to admit the recorded phone call into evidence, Smith objected based on section 934.06, Florida Statutes (2016). The State's argument for admission of the recording was as follows:
STATE: [I]t's a balancing test whether or not there's a reasonable expectation of privacy. There's not a blanket black-or-white switch. And he's making these statements in front of another person. You can hear, when he puts the baby up to the phone, her breathing. So I would argue that he had -has waived any reasonable expectation of privacy because he's making these statements in front of another person.
COURT: The other person being the 20-month-old infant?
STATE: Who's verbal and can talk.
Contrary to the State's assertion, Smith did have a reasonable expectation of privacy in the cell phone conversation. Cf. Hentz v. State, 62 So.3d 1184, 1191 (Fla. 4th DCA 2011) (finding that defendant had a reasonable expectation of privacy in the cell phone call he received while he was in his home; accordingly, a recording of defendant's conversation violated chapter 934). The argument that a phone call made in the presence of a toddler, and in this case, a toddler who was unresponsive, is unpersuasive and should have been rejected by the trial court.
My divergence from Judge Harris's dissent is in his conclusion that the State failed to meet its burden of harmless error. Judge Harris has properly set out the required analysis. However, I cannot agree that the admission of an inaudible tape impacted the jury's verdict. That the mother was initially a suspect and was arrested does not change my view. We do not know whether she was charged as a principal, nor whether the forensic exams had been completed. We do know that she was never charged with any crime related to the death of her child. I agree with Judge Grosshans that the physical and forensic evidence established not only that Smith was responsible for the child's injuries, but also that the mother was not.
I am troubled by the State's introduction of a detective's questioning of Smith as set out in Judge Harris's dissent. The State first argued that the tape was inaudible and then presented the detective's testimony relating substantive statements allegedly made by Smith during the phone call. However, that testimony came into evidence without objection, and any error does not rise to a fundamental level. E.g., Johnson v. State, 256 So.3d 208, 2018 WL 2370469 (Fla. 5th DCA May 25, 2018) (finding unobjected-to testimony did not constitute fundamental error).

Smith also challenges the denial of his request for a special circumstantial evidence instruction. We conclude that the trial court did not abuse its discretion in declining to give the requested instruction. See Jackson v. State , 25 So.3d 518, 531 (Fla. 2009).

At trial, the State did not argue that Smith consented to the recording of the phone call because he knew the mother's cellphone recorded all phone calls. Had the State raised this argument below, perhaps the record would have been clearer as to when Smith became aware of the app on the mother's phone which was capable of recording conversations, albeit illegally. I agree that the record does not establish either that Smith was aware of the app at the time of the phone call at issue or that he was aware that the app was being utilized to record the pertinent phone call.