DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EMILY MIZE ENGLISH,**
Appellant,

v.

**PORT ST. LUCIE POLICE DEPARTMENT,**
Appellee.

No. 4D2023-2068

[January 8, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Brett M. Waronicki, Judge; L.T. Case No. 562023MH000255.

Glenn H. Mitchell, West Palm Beach, for appellant.

Alyssa B. Lunin, Deputy City Attorney, City Attorney's Office, Port St. Lucie, for appellee.

ARTAU, J.

The issue before us is whether a recording and the evidence derived therefrom are admissible in a risk protection proceeding when the recording was made by a patient during her medical consultation with her nurse without the nurse's knowledge or consent. Because we conclude that such a recording and derivative evidence are inadmissible under section 934.06, Florida Statutes (2023), we reverse and remand for further proceedings consistent with this opinion.

## Background

Over the course of approximately five months, a patient had three appointments with the appellant, Emily Mize English, who is a registered nurse ("the nurse"), in furtherance of weight loss treatment that the patient was seeking from the nurse. These three appointments were the only interactions that the patient and the nurse had with each other.

During the first two appointments, the conversation strayed from a discussion about the weight loss treatment to one about their personal

lives.  For instance, the nurse began to talk about her previous military experience after learning that the patient had a son in the military.  They also talked about how the nurse wanted to sue a company for purportedly causing her cats to become sick and how she had previously been a victim of theft and felt that she had lost everything that she owned.

Without obtaining the nurse's consent, the patient recorded portions of their conversations from the first two appointments and posted the recordings on a social media site.

The patient's third appointment took place in the nurse's office, specifically in a patient treatment room, with the doors to the room closed.  Only the nurse and the patient were present in the room.  While the nurse's receptionist came into the room for short periods of time, the receptionist was not in the room during any of the recorded conversation.

Like the first two appointments, the conversation during the third appointment shifted from focusing on the weight loss treatment to focusing on the nurse's personal life.  During this conversation, the nurse provided more details about when she was the victim of theft.  She stated that she had successfully evicted squatters from her home but that they had stolen her significant possessions.  The nurse was upset about this experience not only because she lost her possessions, but also because she believed that law enforcement did not do enough to help her.

The nurse also confided in the patient that she previously had thoughts about taking actions to harm herself or others.  However, the nurse later stated that she was not going to harm herself or anyone else.  Instead, the nurse explained that she had just been feeling hopeless and believed that she could vent to the patient because she "knew [the patient] and [they had] talked about it before."

Sometime during the conversation, the patient took out her phone and began recording the nurse.  As with the previous conversations, the patient did not obtain the nurse's consent to record this conversation.  The nurse testified that she was unaware that her discussion with the patient was being recorded because, as the nurse explained, "[y]ou could see on the video her pants leg where she was hiding the phone" and it was her "understanding that you cannot secretly record in a doctor's office."

Furthermore, the patient was only using her phone to record the conversation at certain intervals of time, making it difficult to ascertain what the patient was doing with her phone.  The patient testified that she

would stop and restart the recording based on whether she believed that the material portion of the conversation was over.

After making the recording, the patient went to a local law enforcement agency and told a law enforcement officer ("the reporting officer") about the recorded conversation and its content. After listening to the recording, the reporting officer believed the patient's version of events.

The reporting officer then went to the nurse's office and interviewed her. As noted above, the nurse explained that she did not plan to harm herself or anyone else. Nonetheless, the reporting officer took the nurse into custody for an involuntary mental health evaluation pursuant to the Florida Mental Health Act, commonly known as the Baker Act. *See generally* §§ 394.451–394.47891, Fla. Stat. (2023).

The law enforcement agency then filed a petition for a risk protection order against the nurse, pursuant to section 790.401, Florida Statutes (2023). The law enforcement agency first sought and obtained a temporary ex parte risk protection order pending final determination of the petition.

After the temporary ex parte risk protection order was issued, the nurse moved to dismiss the petition or, in the alternative, to suppress all direct and derivative evidence obtained from the recording on the grounds that the admission of such evidence would violate section 934.06, Florida Statutes (2023), which prohibits the use as evidence of improperly intercepted wire or oral communications.

Before ruling on the motion, the trial court held a hearing on the petition. At the hearing, the trial court concluded that the recording, and the evidence derived therefrom, was admissible, finding that the nurse lacked an expectation that the recorded conversation was private because it occurred in a place of business and the nurse could see that the patient was using a phone. The recording was therefore admitted into evidence. The law enforcement agency also called the patient and the reporting officer to testify as witnesses.

Following the close of the law enforcement agency's case, the nurse moved for a directed verdict on the ground that the recording was wrongfully admitted into evidence and that without it, the evidence was insufficient for the law enforcement agency to meet its burden of proof. The trial court denied the nurse's motion.

The nurse then testified. She admitted to making the statements during the recorded conversation. But she reiterated that she was merely

venting. She stated that she did not intend to harm herself or anyone else and again denied knowledge that the patient had recorded their conversations.

At the conclusion of the hearing, the trial court announced its factual findings. The findings included a credibility determination against the nurse's testimony on the basis that the trial court had listened to the recording and found the nurse's version of events to be inconsistent with the recording.

The trial court then issued a final risk protection order against the nurse. On appeal, the nurse argues that the trial court erred by admitting the recording and evidence derived therefrom.

## Analysis

"The standard of review for admissibility of evidence is abuse of discretion[.]" *Tengbergen v. State*, 9 So. 3d 729, 736 (Fla. 4th DCA 2009). However, "[t]he standard of appellate review on issues involving the interpretation of statutes is de novo." *B.Y. v. Dep't of Child. & Fams.*, 887 So. 2d 1253, 1255 (Fla. 2004).

*The communication was wrongfully intercepted without consent where the nurse had expected the conversation to be private.*

Section 934.03(1) generally prohibits the interception of "any wire, *oral*, or electronic *communication*[.]" § 934.03(1), Fla. Stat. (2023) (emphasis added). Section 934.03(2) provides exceptions to the general prohibition from intercepting an oral communication. *See* § 934.03(2), Fla. Stat. (2023). One exception that would have allowed the interception of the oral communication here is if the nurse had consented to the recording. *See* § 934.03(2)(d), Fla. Stat. (2023).

An oral communication is "*any oral communication* uttered by a person *exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation* and does not mean any public oral communication uttered at a public meeting or any electronic communication." § 934.02(2), Fla. Stat. (2023) (emphasis added).

As provided in "the definition of oral communication provided by section 934.02(2)," whether a person has an expectation that a conversation is private depends on the factual circumstances surrounding the conversation. *McDade v. State*, 154 So. 3d 292, 298 (Fla. 2014) ("The

4

facts related to the recorded conversations support the conclusion that McDade's statements were 'uttered by a person exhibiting an expectation that [his] communication [was] not subject to interception' and that McDade made those statements 'under circumstances justifying' his expectation that his statements would not be recorded." (alteration in original) (quoting § 934.02(2), Fla. Stat (2010)).

In *McDade*, the defendant's stepdaughter recorded the defendant with a hidden recording device while he solicited sex from her. *Id.* at 294-95. Our supreme court held that the defendant had an expectation of privacy in the recorded communication because the recordings were made "surreptitiously" and the defendant never consented to being recorded. *Id.* at 298.

In *LaPorte v. State*, 512 So. 2d 984 (Fla. 2d DCA 1987), six young ladies came to a studio for a modeling session. *Id.* at 986. They had agreed to be video recorded in different types of clothing, but they did not consent or know that their voices were also being recorded while changing outfits. *Id.* "The young ladies testified that they did not expect their voices to be recorded and, therefore, expected what they said while in a state of undress or in the process of changing clothes would be private." *Id.* The Second District Court of Appeal held that under those circumstances, the women had an expectation that they would not be audibly recorded. *Id.*

Addressing a distinguishable set of facts, the First District Court of Appeal reached the opposite conclusion. In *Smiley v. State*, 279 So. 3d 262 (Fla. 1st DCA 2019), the defendant was recorded while arguing with the mother of his infant child. *Id.* at 263. The First District held that the defendant did not have an expectation of not being recorded because, even though the defendant did not expressly consent to the recording, the victim's phone was positioned "in front of [the defendant's] face" and he "tr[ied] to snatch the phone from the victim's hand" and made "statements suggesting that he knew that he was being recorded." *Id.* at 263-64.

Here, by contrast, the nurse had an expectation that the conversation would not be recorded because there is no competent and substantial evidence showing that the nurse either knew she was being recorded or had consented to being recorded. Moreover, the conversation that was recorded occurred behind closed doors in a patient room. In other words, the conversation took place under circumstances exhibiting an expectation that such communication was private.

Indeed, the nurse testified that she did not know she was being recorded because the patient was "secretly record[ing]" her while "hiding

5

the phone" in "her pants leg[,]" and the patient had failed to indicate to the nurse that she was recording the conversation.

Merely because it was possible for the nurse to see that the patient possessed a phone does not in and of itself provide competent and substantial evidence to conclude that the nurse knew or should have known she was being recorded.  No evidence in the record shows that the nurse knew, or was informed by the patient, that the phone's recording capabilities had been enabled.

Instead, the competent and substantial evidence presented at the risk protection hearing indicates that the nurse had an expectation that her conversation was private as she did not know that she was being recorded because, just like in *McDade* and *LaPorte,* the recording here was made "surreptitiously."

### *The admission of the wrongfully intercepted recording and the evidence derived therefrom was error.*

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and *no evidence derived therefrom may be received in any trial, hearing, or other proceeding* . . . if the disclosure of that information would be in violation of the provisions of this chapter."  § 934.06, Fla. Stat. (2023) (emphasis added).

Thus, because the oral communication here was wrongfully intercepted, section 934.06 required the trial court to exclude not only direct evidence from the wire or oral communication, but also "evidence derived therefrom[.]"  *Id.*; *see also Derivative,* Black's Law Dictionary (12th ed. 2024) (defining "derivative" as "[s]omething that has developed from or been produced from something else."); *Therefrom,* Black's Law Dictionary (12th ed. 2024) (defining "therefrom" as "[f]rom that, it, or them").

### *The error was not harmless.*

A judgment cannot be reversed if an error is harmless.  *See* § 59.041, Fla. Stat. (2023).  An error is harmless if "there is no reasonable possibility that the error contributed to the verdict."  *Special v. W. Boca Med. Ctr.,* 160 So. 3d 1251, 1256 (Fla. 2014).  The burden of proving this is on the beneficiary of the error.  *Id.*

Here, the error of admitting the recording and the evidence derived therefrom at the hearing was not harmless error because the trial court compared the nurse's statements in the recording to her testimony and,

as a result, found her testimony to not be credible. In other words, the trial court made a credibility determination to conclude that the law enforcement agency had met its burden of proof based on the recording itself.

There is a reasonable possibility that if the trial court had not heard the recording, and any of the evidence derived therefrom, it would have found that the nurse's testimony was credible and that the law enforcement agency had not meet its burden of proof.

To meet its burden to prove entitlement to a risk protection order, a petitioner may not rely on inadmissible evidence. *See Petion v. State*, 48 So. 3d 726, 730 (Fla. 2010) (explaining that in non-jury trials, trial courts are presumed to have disregarded inadmissible evidence in reaching its factual conclusions); *see also* § 790.401(3)(b), Fla. Stat. (2023) (establishing the petitioner's burden of proof "by clear and convincing evidence" for entitlement to a risk protection order). The law enforcement agency, as the petitioner here, improperly relied on inadmissible evidence to meet its burden of proof.

Thus, the error of admitting the recording and the evidence derived therefrom was not harmless.

## Conclusion

We reverse the trial court's decision to admit the recording and its derivative evidence. On remand, the trial court is instructed to hold a new hearing with respect to the petition for a risk protection order consistent with this opinion.

*Reversed and remanded with instructions.*

DAMOORGIAN and FORST, JJ., concur.

*         *         *

**Not final until disposition of timely filed motion for rehearing.**

7